# McGee's Appeal.

1. The power of the legislature to vacate streets and highways, or to invest municipal corporations with this power, is not restricted by the Constitution of this Commonwealth.

2. Public streets and highways belong to the Commonwealth, and when the government sees fit to vacate them the consequential loss, if there be any, must be borne by those who suffer it.

3. In the lawful vacation of a street and the appropriation of the ground by

114　　　470
32 SC ²335
32 SC ¹556
114　　　470
35 SC ⁵248

[McGee's Appeal.]

a railroad company, the owners of the abutting property will not, in the absence of any special legislative provision for damages in such cases, be subject to the constitutional condition that compensation shall first be made for property taken, injured or destroyed.

4. An injunction will not be granted to restrain a railroad company from destroying a bridge, a part of a public street which a municipality, by a contract with said company, under an Act of Assembly, had agreed to vacate because the street had not been vacated by a formal ordinance of the council of said municipality, for equity considers that as done which ought to have been done.

5. Where the title of an Act of Assembly does not fully express its subject, only those provisions of the Act not covered by the title are void.

October 25th, 1886. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, J J. MERCUR, C. J., and PAXSON, J., absent.

APPEAL from the Court of Common Pleas, No. 1, of *Allegheny county*, in equity. Of October Term 1886, No. 67.

This is an appeal by Peter McGee from the decree of said court sustaining a demurrer to a bill in equity, and dismissing said bill, wherein Peter McGee was plaintiff, and the Pennsylvania Railroad Co. and the city of Pittsburgh were defendants.

The plaintiff complained in his bill substantially that the Pennsylvania Railroad Company, under a contract with the city of Pittsburgh, through her council, who claimed to have the power to make said contract under the Act of April 15th, 1869, had taken and appropriated to private use Washington street—a public street of the city of Pittsburgh—contrary to the laws and Constitution of this Commonwealth. That he owned property beyond the portion of said street thus taken which was greatly damaged by said unlawful taking and using of said street. That said company had destroyed a bridge a portion of said street, and thus without warrant of law to his damage were vacating said street. He prayed that a mandatory injunction be decreed to issue compelling and requiring said company to replace and rebuild said bridge. That an order be made to assess the damage sustained by him by reason of the unlawful acts of the defendants against them. And for general relief.

To this the defendants severally demurred, and assigned the following reasons:—

1. That the matters in said bill complained of appear to have been done under a claim of right derived from the select and common councils of the city of Pittsburgh.

2. That it appears, in and by said bill, that the vacation of Washington street therein complained of was the subject of a

contract between the said Pennsylvania Railroad Company and the said defendants, and that no complaint is made by said city that the said acts complained of by the plaintiff are not in conformity with said contract.

3. That it appears, in and by the terms of an Act of Assembly recited in said bill, viz., the Act of April 15th, 1869, that the said defendants were empowered to make said contract.

4. That it is not in said bill alleged or insinuated that, prior to the vacation of Washington street, as complained of, the said Pennsylvania Railroad Company had not acquired the property fronting on both sides of the said portion of said street vacated.

5. That the matters in said bill complained of do not present such case as entitles the plaintiff to the relief prayed for.

6. That it appears, in and by the said bill, that for any cause complained of the said plaintiff has an adequate remedy at law.

The demurrers were sustained by the court and the plaintiff's bill dismissed, whereupon the plaintiff took this appeal, assigning for error the action of the court in sustaining the demurrers and dismissing his bill.

*McCreery* (*Marcy* with him), for appellants.—The injury complained of, if it exists without authority of law, is such an one as in its nature would be a proper subject for the exercise of the power of injunction. The principle is that, whenever the wrong done is of such a character as to amount to a permanent occupation of the property in which the complainant has an estate, an injunction can issue to prevent it or to restrain its further continuance: Bevan *v.* Turnpike, 10 Barr, 176 ; Wesley *v.* Moore, Id., 280.

An individual owner may maintain an action to enjoin the construction of a railroad which would be a nuisance. An unlawful destruction of a highway is a public and common nuisance : Thompson on Prop. Rem., 245.

The right of the plaintiff to maintain his bill of complaint is not denied by the court below, and he avers in himself and to his property a special damage: Reynolds *v.* Clarke, 1 Pitts., 9.

An action will lie for consequential damage occasioned by a common nuisance : Pittsburgh *v.* Scott, 1 Pa. St., 309.

The unauthorized occupation of a street by a railroad track is a nuisance *per se* which will be enjoined: Atty. Genl. *v.* Street Railway, 1 W. N. C., 489; Fletcher *v.* Auburn R. R. Co., 25 Wend., 462

The Constitution of this Commonwealth, art. XVI., sect. 8, secures to the appellant compensation for all consequential

damages sustained by him: Pennsylvania R. R. Co. v. Duncan, 1 Amerman, 352.

The first section of the Act under which it is claimed the council of the city of Pittsburgh had power and did contract with the R. R. Co. for said street, is unconstitutional.

In Allegheny County Home's Appeal, Pa. St., 77, this court said: " If the title to an Act do not clearly indicate its entire subject matter, it is unconstitutional.

In Dewhurst v. Allegheny, 95 Pa. St., 437, it was said: " If the title to an Act of Assembly does not fully express its subjects, it is only those provisions not covered by it that are void."

This law would sustain the second section of the Act, in so far as it relates to the naked grant of power to vacate streets or alleys in the city of Pittsburgh, but as it contains no mode of procedure for assessment of damages, such as is contained in the general law, in the 2d section of the Act of 15th April, 1845, P. L., 449, it would therefore be construed to be simply a grant to the city councils of a power already existing in the Quarter Sessions Court, but without its machinery: Sharret's Road Case, 8 Barr, 89.

*Dalzell (Hampton* with him), for appellee.—1. It was competent for the legislature, by the Act of April 15th, 1869, to authorize the vacation of Washington street by the city of Pittsburgh.  " The plenary power of the legislature over streets and highways is such that it may, in the absence of special constitutional restriction, vacate or discontinue them, or invest municipal corporations with this authority ": Dillon on Municipal Corporations, sec. 666 ; Gray v. Iowa Land Co., 26 Iowa, 387 ; Kimball v. Kenosha, 4 Wis., 321 ; Stuber's Road, 28 Pa., 199 ; Commonwealth v. Gas Co., 12 Id., 318 ; Trenton Railroad case, 6 Wharton, 25 ; Jersey City v. State, 1 Vroom., 521 ; Bailey v. Railroad Co., 4 Harrington (Del.), 389 ; Hunchman v. Detroit, 9 Mich., 103.

2. This plenary power of the legislature to vacate Washington street is not limited by any constitutional restriction : Paul v. Carver, 12 Harris, 211.   The vacation of the portion of Washington street vacated took no private property belonging to the appellant.   What he owns is several squares distant, on the corner of that part of Washington street still remaining open, and of another highway.

3. Even if the appellant has sustained such injury as entitles him to compensation, still he has no standing in a court of equity to obtain an injunction.   If we assume the facts to be true as stated in the appellant's bill, it is perfectly apparent that he is seeking to enforce by this proceeding a duty, the

enforcement of which belongs to the Commonwealth: Coxe *v.* P. W. & B. R. R. Co., 10 W. N. C., 532.

If he has sustained special damages he has an adequte remedy at law: Appeal of Turnpike Co., 11 W. N. C., 185.

Whenever a right of action at law clearly exists, the presumption is that an adequate remedy is afforded whereby the injury may be fully compensated in damages: Richard's Appeal, 7 P. F. S., 102. To this may be added: Huckenstein's Appeal, 20 P. F. S,, 102; Sparhawk *v.* Union Pass. R. W. Co., 4 Id., 491; Mayer's Appeal, 23 Id., 164; Harkinson's Appeal, 28 Id., 196.

An action will lie for consequential damages occasioned by a common nuisance: Pittsburg *v.* Scott, 1 Barr, 309.

The issuance of a mandatory injunction for the abatement of a nuisance is a matter of grace, not of right: Ohio *v.* Commissioners of Spring Garden, 7 Barr, 366.

The mere diminution of the value without irreparable injury furnishes no ground for equitable relief: Attorney General *v.* Nichols, 16 Vesey, 342; O'Neil *v.* Gallagher, 1 W. N. C., 99.

Mr. Justice CLARK delivered the opinion of the court, January 7th, 1887.

This is an appeal from a decree of the Court of Common Pleas of Allegheny county, sustaining a demurrer to a bill in Equity. The prayer of the bill was for an injunction to restrain the city of Pittsburgh and the Pennsylvania Railroad Company from tearing down a bridge which formed part of Washington street, upon which street plaintiff's property abutted.

By an Act of Assembly approved 15th April, 1869, entitled "an Act to authorize the Select and Common Councils of the city of Pittsburgh to vacate streets and alleys in said city," it was provided in the first section, "that the Councils of said city should have power to enter into a contract with the Pennsylvania Railroad Company, and other companies named, whereby public travel may be rendered more safe in said city, and the depot property of the said companies, or either of them, may be enlarged and made to afford greater facilities for the receipt and shipment of merchandise, and the general comfort of the travelling public." The second section is as follows:—

Sec. 2.—"That said councils, for the purpose of enabling said contract or contracts to be carried out shall have and are hereby given authority to vacate and close up the whole or any portion of any streets or alleys in said city, and generally to do such acts and pass such ordinances as they deem expedient for the purpose aforesaid; provided, however, that

no street or alley, or portion of the same, as aforesaid, shall be vacated or closed up, unless the said companies, or either of them shall first acquire, by purchase or otherwise, the property fronting on both sides of the street or alley, on such portion thereof that may be vacated or closed up."—Pursuant to the provisions of this statute the city of Pittsburgh, on the 24th December, 1872, by an ordinance of that date, agreed with the Pennsylvania Railroad Company to vacate Washington street from Liberty to Fountain, Grant street from Liberty to Seventh Avenue, and all streets and alleys within the area of ground bounded by Liberty street, Seventh Avenue, Cherry Alley and the westerly line of Grant street extended; the said company within a certain time and in a manner specified ".to construct on the line of Washington street a substantial iron bridge for foot passengers, within a width of eight feet, extending from the line of Fountain street to the northern side of Liberty street, with approaches by steps or stairs on both sides of said bridge, and on both sides of said street, at the curb line to the pavement of Liberty street; and said company further agree, at their own expense, to grade, pave and curb Fountain street from Washington street to Seventh Avenue, to widen Cherry Alley fifty feet, making said alley seventy feet in width, and to widen Seventh Avenue on the northerly side thereof between Cherry Alley and the east side of Grant street, so as to make said avenue seventy feet in width, and within one year, or as much sooner as practicable, to remove all rails from Liberty street crossing the approaches to said Union Passenger depot, except the main tracks with the Allegheny Valley Railroad, Pittsburgh, Fort Wayne and Chicago Railway and the main tracks now used from said depot to the Duquesne depot," etc. Thus it appears that, whilst certain highways of the city were vacated and closed, other convenient outlets were provided for the public use in their stead. It is not denied that the Pennsylvania Railroad Company became the purchaser of all the property fronting on both sides of such portions of the streets and alleys as were to be vacated, and complied fully and in all respects with the conditions of their contract with the city.

Peter McGee, the appellant, is the owner of a lot of ground fronting one hundred feet on that part of Washington street which is not vacated, with frame dwelling houses, used also for business purposes, thereon erected. The bill does not state how far this property is from Fountain street where the vacation of Washington street ends; at the argument however it was assumed to be several squares distant.

Washington street, below Fountain, crossed the Pennsylvania Railroad tracks by means of a bridge which formed

part of the street, and in March 1884, the company, with the consent of the city councils, proceeded to remove this bridge, with a view to the erection of an iron structure for foot passengers called for by the contract. It was to prevent the removal of this bridge that this bill was filed.

Washington street was a public highway, and as the Pennsylvania. Railroad Company became the owner of the lots abutting that portion of the street proposed to be vacated, the commonwealth had an undoubted right to vacate it either directly by an Act of Assembly to that effect, or indirectly through powers conferred upon the city councils or the courts, especially as the purpose of the vacation was " to render public travel in the city safer, and to promote the comfort of the travelling public."

In the absence of any constitutional restriction the power of the legislature to vacate streets and highways, or to invest municipal corporations with this power, cannot be doubted: Dillon on Mun. Corp., 666. In Pennsylvania, a highway "is the property of the people, not of a particular district, but of the whole state; who, constituting as they do the legitimate sovereign, may dispose of it by their representatives and at their pleasure:" Phila. & Trent. R. R. Co's., 6 Wh. 25. Prior to the adoption of the present constitution, there was certainly no restriction of the powers of the legislature, in this respect; the legislature had a clear right to vacate any public highway, with or without the consent of the person whose private interests are or may be affected by it. This subject was very fully considered in Carver *v.* Paul, 12 Harris 211, where this court said:—

" To open new highways, whether streets or country roads, and to vacate those which are useless, inconvenient and burdensome is a power which must reside somewhere in every well regulated government. In our own, we have many laws conferring this authority on courts, on county and township officers, on city and borough councils, and on special commissioners. In very many cases, also, the General Assembly has by its own direct and immediate Acts, ordered that streets and roads should be vacated, as well as opened, widened, and otherwise altered. Do all these laws violate the constitution? We cannot find anything in that instrument with which they are in conflict." In the same case, it was held that a highway might be vacated without providing for compensation to those whose private interests were affected thereby. "Surrendering the right of way," says this court, " over a public road to the owners of the soil, is not taking private property for public use, and the proprietors of other land incidentally injured by the discontinuance of the road, are not entitled to compen-

sation. A private road is private property, and an Act of Assembly to close it up without paying for it, would be depriving the owner of his property. But a public road belongs to nobody but the state; and when the government sees fit to vacate it, the consequential loss, if there be any, must be borne by those who suffer it, just as they would bear what might result from a refusal to make it in the first place."

Nor is the power of the legislature in this respect restricted by the provisions of the constitution of 1874. The only sections of that instrument which might be supposed to have any such effect are the following:—

Art 1, sec. 10.—"Nor shall private property be taken or applied to public use without authority of law, and without just compensation being first made or secured.

Art. 16, sec. 8.—"Municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works, highways or improvements; which compensation shall be paid or secured before such taking, injury or destruction." But by the vacation of Washington street, no private property was taken or applied to public use; on the contrary, private property which had heretofore been appropriated by the public, was surrendered to the proper owner, and when thus surrendered, who can gainsay the right of the owners to use it with their other property in the construction or enlargement of their works, highways or improvements. Whether or not the ordinance of the councils was a wise and prudent measure we are not called on to consider; its avowed, and doubtless real purpose was to subserve the public interest; it may however have originated in a mistaken policy; it may have conferred a benefit upon one, to the incidental injury of others. But the functions of civil government must be trusted to somebody, and the results of its injudicious exercise must be borne without complaint. We are of opinion therefore that the vacation of Washington street and the appropriation of the ground by the railroad company, the owners of the abutting property, would not, in the absence of any special legislative provision for damages in such case be subject to the constitutional condition that compensation shall be first made for property taken, injured, or destroyed. If, as in the vacation of Center street, 19 W. N. C., 89, there had been a special provision for the award of damages to the owners of property injured by the vacation, a different question would be presented. The injury which the plaintiff suffered was from the vacation of the street, and this was the act of a municipality to which the plaintiff was subject.

But it is said the street was not vacated; that no ordinance to that effect was ever passed; it is nevertheless true, that the city, by an ordinance in due form, and by a contract in pursuance thereof, agreed to vacate it and that all the conditions, to be performed by the company under their contract with the city councils, have been complied with, and nothing remains but the formal action of councils. This is a proceeding by a bill in equity for an injunction. It would certainly be inequitable and unjust to restrain the company from doing what they have an undoubted right to do. If the street has not been vacated, by a formal ordinance of councils to that effect, it should have been, and in equity we will consider that as done which ought to have been done.

In this aspect of the case, whatever may be the rights of the plaintiff at law, we are very clear that he has no standing in equity. The question as to the constitutionality of the Act of 1869, upon the ground of the alleged defect in its title, does not affect our view of the case. The title of the Act is, "An Act to authorize the Select and Common Councils of the city of Pittsburgh, to vacate streets and alleys in said city," and the vacation of Washington street, or the ordinance stipulating for its vacation, is the precise matter complained of. If it be conceded, however, that the title does not fully express the subject of the Act, it is only those provisions not covered by it, that are void. Dewhurst *v.* Allegheny City, 95 Penn. 437.

Decree affirmed, and the appeal dismissed at the cost of the appellants.