## McGonnell's License.

*Liquor law—Statutes—Repeal—Local Acts of March 27, 1866, P. L. 339, and April 11, 1866, P. L. 658, relating to Coudersport and Potter county.*

The local Act of April 11, 1866, P. L. 658, prohibiting the granting of licenses to sell liquor in Potter county repeals the local Act of March 27, 1866, P. L. 339, prohibiting the issuing of liquor license in the borough of Coudersport.

*Liquor law—Constitutional law—Delegation of legislative power—Acts of April 28, 1899, P. L. 67 and 68.*

The Acts of April 28, 1899, P. L. 67 and 68, which attempt to repeal the local acts of March 27, 1866, P. L. 339, relating to Coudersport and April 11, 1866, P. L. 658, relating to Potter county, are unconstitutional, inasmuch as they seek to delegate the legislative power by requiring that the repeal provided for shall not go into effect unless a majority of duly qualified voters of the borough and county shall vote in favor of said repeal at an election to be held in accordance with the provisions of the act. The first sections of the acts of 1899, containing the repeal cannot be upheld and the remaining sections declared void, inasmuch as the parts of the acts are so

mutually related as to make it evident that the legislature intended them to constitute an entire whole. Locke's Appeal, 72 Pa. 491, distinguished.

RICE, P. J., and MORRISON, J., dissent.

Argued Oct. 30, 1903. Appeal, No. 188, Oct. T., 1903, by James McGonnell, from order of Q. S. Potter Co., granting a liquor license in In Re Petition of James McGonnell. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Petition for a liquor license.

From the record it appeared that on April 21, 1903, James McGonnell filed a petition for a retail liquor license, for the Hotel McGonnell in the borough of Coudersport, accompanied by certificate of qualified electors in support of the petition, and the same day filed the bond required by law.

On May 14, 1903, W. B. Brightman, M. S. Thompson, M. S. Harvey, A. B. Mann, James L. Knox et al., residents of the borough of Coudersport, filed a remonstrance against the granting of a license to the applicant.

On June 16, 1903, the court granted the license.

*Error assigned* was the order of the court.

*W. I. Lewis*, with him *Arch. F. Jones*, for appellants.—A general later affirmative law does not abrogate an earlier special one by mere implication: Endlich on the Interpretation of Statutes, section 223, page 298, section 227, page 303 ; Commonwealth v. Vetterlein, 21 Pa. Superior Ct. 587.

In order to make a later enactment repeal a former, passed at the same session, there must be an express declaration or absolute inconsistency. In such case there is a stronger presumption against intention to repeal than in case of statutes passed at different sessions : Endlich on the Interpretation of Statutes, section 188, pages 259, 260.

To repeal a statute by implication there must be repugnancy irreconcilable : Contested Election of Barber, 86 Pa. 392 ; Dickinson v. Dickinson, 61 Pa. 401 ; Homer v. Commonwealth, 106 Pa. 221 ; Hendrix's Account, 146 Pa. 285 ; Rymer v. Luzerne County, 142 Pa. 108 ; Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231 ; Commonwealth v. Vetterlein, 21 Pa. Superior Ct.

587; McHenry's Petition, 6 Pa. Superior Ct. 464; Murdock's Petition, 149 Pa. 341.

The acts of 1899 are an unconstitutional delegation of legislative authority: West Philadelphia Borough, 5 W. & S. 281; Parker v. Com., 6 Pa. 507; O'Neil v. Artisans' Ins. Co., 166 Pa. 72.

The principle that legislative power cannot be delegated has been held in similar cases as follows: Barto v. Himrod, 8 N. Y. 483; Thorne v. Cramer, 15 Barbour (N. Y.), 112; Santo v. State, 2 Iowa, 165; Ex Parte Wall, 48 California, 279–313; State v. Beneke, 9 Iowa, 203; State v. Field, 17 Mo. 529; Bank v. Brown, 26 N. Y. 467; State v. Wilcox, 45 Mo. 458; Opinion of Justices to the House of Representatives, 160 Mass. 586 (36 N. E. Repr. 488).

*John G. Johnson,* with him *W. K. Swetland,* for appellee.— A subsequent affirmative statute is a repeal by implication of a former one made concerning the same matter, if it introduces a new rule upon the subject and be evidently intended as a substitute for the former law although it contains no express words repealing it: Johnston's Est., 33 Pa. 511; Com. v. Cromley, 1 Ash. 179; Com. v. Mann, 168 Pa. 290; Nusser v. Com., 25 Pa. 126; McCleary v. Allegheny County, 163 Pa. 578; Commonwealth v. Grier, 152 Pa. 176; Martz's Contested Election, 110 Pa. 502.

This case is governed by Locke's App., 72 Pa. 491.

The courts will not declare an act of assembly void unless it violates the constitution clearly, palpably, plainly and in such a manner as to preclude doubt or hesitation: Speer v. School Directors, etc., 50 Pa. 150; Sharpless v. Mayor, etc., 21 Pa. 147; Hilbish v. Catherman et. al., 64 Pa. 154; Durach's Appeal, 62 Pa. 491.

OPINION BY BEAVER, J., March 14, 1904:

By the Act of March 27, 1866, P. L. 339, the issuing of licenses within the borough of Coudersport, in the county of Potter, or within two miles of the same, was prohibited. The second section provides: "That, if any person or persons shall, for the purposes aforesaid, sell any spirituous, vinous, malt or brewed liquors, as aforesaid, after the passage of this act,

within the limits aforesaid, he, or she, upon conviction thereof, shall be fined, in a sum of not less than $50.00 nor more than $200 and, upon a second conviction thereof, in addition to the fine already imposed, shall undergo an imprisonment in the county jail for a period of not more than three months : Provided, however, that persons who are already licensed to sell said spirituous, vinous, malt and brewed liquors as aforesaid, within the limits aforesaid, shall not be prevented from selling the same, until after the expiration of their licenses.    And provided also, that manufacturers of domestic wines shall not be prohibited from selling the same in quantities of not less than one pint."

The Act of April 11, 1866, P. L. 658, prohibited the granting of licenses to sell intoxicating ·drinks within the county of Potter.    The second section thereof provided : " That, if any person, or persons, within the said limits, shall sell, trade or barter away any vinous, spirituous or any kind of intoxicating liquors or intoxicating tonic or other bitters, to be used as a beverage, he or she, upon conviction thereof in the court of quarter sessions of said county, shall be fined in a sum of not less than $50.00 nor more than $200 for the first offense and, upon a second conviction, the fine shall not be less than $100 nor more than $300, and, in addition to the fine, the person so convicted a second time shall undergo imprisonment in the county jail for a period not less than thirty days nor more than six months : Provided, however, that manufacturers of domestic wines and of malt and brewed liquors shall not be prohibited from selling their own products in quantities of not less than one gallon ; and provided further that this act shall not apply to druggists who sell unmixed alcohol or wine or brandy on the written prescription of a regular practising physician."

It is to be observed that the later act covered all of the territory and more than was embraced in the earlier ; that it included all the intoxicating drinks mentioned in the earlier law as well as other things ; that it also included all the fines mentioned in the earlier law and increased those to be imposed for a second offense ; that it increased the amount which manufacturers of domestic wines were allowed to sell, and added malt and brewed liquors to the articles not prohibited; in short,

that in every essential particular the later law embraced everything contained in the earlier and other things in addition. It is clear to our minds, therefore, that the later law, which included the entire county of Potter, repealed, by implication, that portion of the earlier which related to the borough of Coudersport, in the county of Potter. It is true there is no distinct repealing clause, but here were two acts of assembly passed the same year, within fifteen days of each other, relating to the same subject, covering in the later one the same territory included in the earlier, the later one including provisions not included in the first, adding additional penalties for a violation of the later law and increasing, by the later act, the privileges allowed to manufacturers under the first and adding thereto. It is plain, therefore, that everything to be secured by the earlier law was maintained by the later and that the two could not be consistently administered together. We are clear, therefore, that, upon well-settled authority, the earlier law was repealed, by necessary implication, by the later.

April 28, 1899, both of these acts of assembly were attempted to be repealed (P. L. 67 and 68). The first sections of each of those acts contain words of absolute repeal. The second sections of both of them are identical, except that the word county appears in one, in place of borough in the other, and are as follows : " Section 2. Provided said repeal shall not go into effect, unless a majority of the duly qualified voters of said borough (or county) shall vote in favor of said repeal at an election to be held as provided for in section three of this act." The third sections of both acts are also identical, except that the word county is used in the one for borough in the other. " Section 3. The same shall be submitted to a vote of the duly qualified electors of said borough (county) at an election to be held on the third Tuesday in February, one thousand nine hundred; such election shall be held at the places and by the officers provided by law for the holding of municipal elections, and it shall be the duty of inspectors and judges of such elections to receive the ballot, as provided by law, from electors qualified under the constitution of this state to vote in such districts; such ballots to contain the word 'repeal' and 'no repeal,' and to deposit such ballots in a box

provided for that purpose, as is provided by law, and the ballots so received shall be counted and a return thereof made to the clerk of quarter sessions of the proper county, duly executed, as required by law as to other ballots, and the clerk shall make a record of the same."

These are the essential parts of the several acts necessary to an understanding of the main question raised by this appeal and presented for our consideration.

The first section of the second article of the constitution provides that " the legislative power of this commonwealth shall be vested in a General Assembly which shall consist of a Senate and House of Representatives." That the legislature cannot delegate its legislative power to any other body or authority has nowhere been more clearly stated than in Locke's Appeal, 72 Pa. 491, in which Mr. Justice AGNEW, delivering the opinion of the court, says: " That a power conferred upon an agent, because of his fitness and the confidence reposed in him, cannot be delegated by him to another, is a general and admitted rule. Legislatures stand in this relation to the people whom they represent; hence it is a cardinal principle of representative government that the legislature cannot delegate the power to make laws to any other body or authority." If, therefore, we consider the repealing acts of April 28, 1899, P. L. 67 and 68, as a whole, or if we assume that the Act of April 11, 1866, P. L. 658, relating to the entire county of Potter, repealed by necessary implication the Act of March 27, 1866, P. L. 339, relating to the borough of Coudersport and parts adjacent thereto, we feel bound to hold that the said acts, or at least the last named Act of April 28, 1899, P. L. 68, was clearly unconstitutional, inasmuch as, by the second section thereof, the legislature specifically provides that the repeal provided for in the first section, absolute on its face, shall not go into effect unless a majority of duly qualified voters of said county shall vote in favor of said repeal at an election to be held as provided for in section 3 of this act.

It requires no argument to show that the repeal of a law already in existence is as much an act of legislative power as the enactment of a positive, affirmative statute. It is clear that, on April 28, 1899, the prohibitory law for Potter county was in full force and effect, and its provisions operative

throughout the territory covered by it.  What was the object of the act of April 28, 1899, supra?  Clearly, to repeal the previous act.  Did the act in itself repeal it?  Clearly, no. What was required for its repeal?  Just as clearly, the act of the legislature, plus the vote of the people ; in other words, if the people voted for repeal, the prohibitory act was repealed; if they voted against repeal, it was not repealed.  If this was not a delegation of the power of the legislature to the people, what was it ?

Can the first section of the act be upheld and the remaining sections declared void, because of their unconstitutionality ?  In numerous cases in Pennsylvania this has been done, but they were cases in which, as in Allegheny County Home's Case, 77 Pa. 77, and McGee's Appeal, 114 Pa. 470, the titles of the several acts therein considered were good as to some sections and bad as to others ; or as in Ruan Street, 24 W. N. C. 460, the first and second sections of the Act of May 6, 1887, P. L. 87, were held to be good, changing thereby what was local or special in road cases in the city of Philadelphia, so as to harmonize with the general system prevailing throughout the rest of the state ; and sections three and four were bad, as violating article three, section seven of the constitution which prohibits local or special laws, " regulating the practice or jurisdiction of any judicial proceeding or inquiry."  These and other cases of like character were based upon the general rule that, if the unconstitutional portions can be taken out and still leave a complete legislative act, capable of being executed in accordance with its plain intent and not in anywise depending on the rejected parts, the act will still be valid :  Cooley's Cons. Lim. 178.  But it seems to us that the act under consideration comes clearly under the other general rule, equally well settled, that " If the parts are so mutually related as to make it evident that the legislature intended them to constitute an entire whole, so that, if all could not be carried into effect, none would have received the legislative sanction, all must be declared unconstitutional : " Cooley's Cons. Lim. 177.

It is argued, however, that the case comes within the principle of Locke's Appeal, 72 Pa. 491.  If the act was an absolute and unconditional repeal of the prohibitory act for Potter county, it would, of course, leave that territory subject to the

general laws governing the granting of licenses, and if, in addition to the repeal and in lieu of the second section, the people of the county of Potter had been allowed to vote license or no license, the case would be practically that of Locke's Appeal, supra. It may be said that the practical result would be the same, whether the vote of the people be for repeal or against repeal, or for license or against license. This may be granted, but, in the one case, it would be reached in harmony with the constitution as interpreted by our Supreme Court, and, in the other, in direct conflict with it. The distinction between the two methods of reaching the same result is clearly stated by Mr. Justice AGNEW in Locke's Appeal, supra : " The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." The distinction is not a mere refinement, we are bound to accept it as real, otherwise Locke's Appeal could never have been written as it now stands. If the legislature wishes to bring an act of assembly within the principle of Locke's Appeal, it must do so in distinct and positive form and phrase. As we view the repealing act in question, it has not done so therein.

The other questions in the case could be well resolved in favor of the affirmance of the decree of the court below, but the single question which we have discussed in a very general way is so fundamental and vital that we dare not depart from it, and it settles the case.

We put our decision directly upon the proposition that the repealing act in question is a delegation of legislative power by the legislature to the people, and that such a delegation is in direct conflict with the first section of the second article of the constitution hereinabove quoted. Holding this, the decree of the court below must be necessarily reversed.

Decree reversed.


MORRISON, J., dissenting :

I find myself unable to agree with the majority of the court that the court below erred in granting the petitioner's license, and I desire to place upon the record some of my reasons for dissent.

The important questions are raised by three several acts of assembly relating to intoxicating liquors in the county of Potter.

The first is an act entitled "An act to prohibit the issuing of licenses within certain boroughs of the counties of Armstrong, Potter, Indiana and Perry, or within two miles of the same, in the counties in which such boroughs are located." This act applied to the borough of Coudersport in the county of Potter, and it was approved March 27, 1866, P. L. 339. The next is an act entitled "An act to prohibit the granting of licenses to sell intoxicating drinks within the county of Potter." This act was approved April 11, 1866, P. L. 658.

Then comes an act entitled "An act to repeal an act approved the 11th day of April, Anno Domini, one thousand eight hundred and sixty-six, entitled 'An act to prohibit the granting of licenses and sale of intoxicating drinks within the county of Potter,' and submit the same to the voters of said county." This act was approved April 28, 1899, P. L. 68.

The first question is, did the second or Potter county act cover the whole question within the county of Potter, and is it so in conflict with the first act in regard to the same subject, in Coudersport borough, that it repealed that act by implication? I think a comparison of the two acts makes it plain that they are in conflict and being local acts upon the same subject the subsequent act repealed the former. The Potter county act of April 11, 1866, by its title as well as its terms seems beyond all question to have been intended by the legislature to apply to the whole county of Potter. It materially differs in its terms and penalties from the Coudersport borough act of March 27, 1866, and while the second act contains no repealing words it must be presumed that the legislature intended it to take the place of the Coudersport act. This question has been so concisely stated by the learned counsel for the appellee that I will quote their language: "It is an affirmative statute revising the whole subject-matter and expressly contradicting the provisions of the former statute, and following the decisions of our Supreme Court must be construed as introducing a new law upon the subject and evidently intended as a substitute for the former enactment, and although it contains no express words to that effect, must upon the principles of law as

well as in reason and common sense operate to repeal the former."

If authority is wanted on this subject see Nusser v. Com., 25 Pa. 126 ; Johnston's Estate, 33 Pa. 511 ; McCleary v. Allegheny County, 163 Pa. 578 ; Com. ex rel. v. Grier, 152 Pa. 176, and In re contested Election of Martz, 110 Pa. 502. In my opinion a careful reading of the two acts of assembly in the light of the above authorities effectually disposes of the Coudersport prohibitory act of March 27, 1866, because it was repealed by the Potter county prohibitory act of April 11, 1866, supra.

This brings me to a consideration of the act of April 28, 1899, supra. The first section reads : " That the act of the general assembly, approved the 11th day of April, Anno Domini, one thousand eight hundred and sixty-six, entitled ' an Act to prohibit the granting of licenses and sale of intoxicating drinks within the county of Potter,' be and the same is hereby repealed.

" Section 2. Provided, said repeal shall not go into effect unless a majority of duly qualified voters of said county shall vote in favor of said repeal, at an election to be held as provided for in section 3 of this act."

The remaining two sections of the act need not be quoted. They provide for the vote of the electors of the county, the time when the elections shall be held, the ballots, who shall hold the elections, the counting and making return to the clerk of the quarter sessions of the proper county, duly executed, as required by law as to other ballots, and that the clerk shall make a record of the same. And some other matters in regard to the holding of the election, which are not material in this discussion. It will at once be seen that the important question is, does this act repeal the Potter county act of April 11, 1866 ? If it does the court below did not err in granting the appellee's license. In my opinion this act absolutely repealed the Potter county act, supra, and it attempted to delegate no legislative power to the voters of Potter county. This question is ruled by the elaborate and able discussion by AGNEW, J., in Locke's Appeal, 72 Pa. 491.

The rule in Locke's Appeal was considered by the Supreme Court, opinion by WILLIAMS, J., in O'Neil et al. v. Artisan's Ins. Co., 166 Pa. 72, where it is said : " That inasmuch as the law

with all its provisions and its penalties was complete when it left the legislature, and the only question submitted to the electors of the locality was whether they desired this law to become operative in the subdivision of the state in which they lived, such submission did not amount to a delegation of legislative power. No provision or requirement of the law was left to be supplied in order to make it complete in all its parts; but the vote of the electors served to give expression to their wish in reference to the subjection of the locality they represented to its already finished provisions. It has frequently been held that local questions may be submitted in this manner to those who are to be directly affected by their decision. The division of a county is such a question, and a law submitting the question to a popular vote and making the division depend on the result of the vote was sustained in Smith v. McCarthy, 56 Pa. 359. So is the location of the county seat : Com. v. Painter, 10 Pa. 214. So also is the granting of licenses to sell intoxicating drinks : Locke's Appeal, 72 Pa. 491. Such laws are in form and in substance laws in presenti to take effect in futuro upon the ascertainment of the wish of those most directly affected thereby." In Speer v. School Directors, 50 Pa. 150, AGNEW J., quoted approvingly (p. 158) : " There is another rule which must govern us in cases like this, namely, that we can declare an act of assembly void only when it violates the constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in our minds." See also Sharpless v. Mayor, 21 Pa. 147, Hilbish v. Catherman, 64 Pa. 154, and Durach's Appeal, 62 Pa. 491 ; also Jermyn v. City of Scranton, 186 Pa. 595.

In the light of the principle that legislation should be upheld unless clearly unconstitutional is it not the duty of the court to uphold the act of April 28, 1899, if this can be done by fair and legal judicial construction ? Let us suppose that the second section of this act had provided that no license should be granted in the county of Potter until the question had been submitted to the voters in the manner provided in said act. In that case it hardly seems possible that an argument could be made against the constitutionality of the act. It is true that the language used in the second section that the ballots shall contain the word " repeal " and " no repeal " is not the

best language that could be used by the legislature. But in view of the well known rule that there cannot be a delegation of legislative power to the people, is it not the duty of the court to construe this language to simply mean that notwithstanding the repeal of the Potter county prohibition act, yet no license shall be granted in the county of Potter, under the general license laws, until the question of "license" or "no license" shall have first been submitted to a decision of the voters of said county? If such construction can be properly given to the act of 1899, then all difficulties disappear. The appellants cite and seem to rely on Frost v. Cherry, 122 Pa. 417. But that case has no application to the question now under consideration. There the legislature authorized a vote upon the question of whether or not the Act of June 23, 1885, P. L. 142, repealing the fence law of 1700, should go into effect, this vote to be taken by counties. The question of a delegation of legislative power was attempted to be raised in that case, but the court below and the Supreme Court refused to consider it upon that ground. The decision of the Supreme Court was that the act of 1885 was unconstitutional, because it related to the affairs of counties and would, if upheld, be in violation of section 7, article 3 of the constitution in that its effect would be to establish local or special laws in relation to the affairs of counties. For example a county voting in favor of the law going into effect would have the fence law of 1700 repealed, and a county voting against said law going into effect would have the fence law of 1700 in full force and effect, if the legislation had been valid. This would be special or local legislation in regard to the affairs of counties and such legislation was strictly prohibited by the article and section of the constitution, supra. No such effect can be claimed for the act of April 28, 1899, repealing the Potter county prohibition act. Instead of such an effect, if the act is upheld, it will do away with the local legislation in Potter county, in regard to liquor licenses, and bring that county under the general license laws of the state. For myself I can see no legal difficulty in so construing these three acts of assembly as to place that county under the general license laws of the state, at any time when the voters of the county shall vote in favor of license, as provided in the act of 1899.

MᴄGONNELL'S LICENSE.

Dissenting Opinion.          [24 Pa. Superior Ct.

It is contended that the act of 1899 is defective in that it does not provide any legal method by which the court of quarter sessions can be properly advised of the result of the election provided for in the act. It does not seem to me that this question requires much consideration at this time. The act does provide for an election, by whom it shall be held, the form of the ballots, counting the same and making return thereof to the clerk of the court of quarter sessions of the proper county, as required by law as to other ballots, and the clerk shall make · a record of the same. The learned judge who granted the license, appealed·from in this case, was the judge of the court of quarter sessions of Potter county, and it ought to be presumed that the record of the vote required to be made in his court was made, and that he was fully advised in regard thereto before passing upon the question of license or no license. All of the presumptions are in favor of the fact that the election resulted in a majority of the votes cast being in favor of license, and that the learned judge found this record made up in his court by the clerk as the law required him to do.

I would affirm the order of the court below and dismiss the appeal at the costs of the appellants.

This appeal and Nos. 189, 190, 191, 192 and 193 raise precisely the same questions and this dissent is intended to apply in each case.

RICE, P. J., joins in dissent.