# Titusville Amusement Co. et al. *v.* Titusville Iron Works Co. et al., Appellants.

*Municipalities—Road law—Vacation of street—Bargaining away public interests—Ordinance—Purpose of ordinance.*

1. A city cannot bargain away, even for a valuable consideration, its right and duty to vacate a public street, when the public interests require it so to do.

2. The recital in a municipal ordinance that it was passed for the public good, is entitled at least to great respect.

3. The courts do not inquire into a municipality's purpose in doing that which it has a legal right to do.

*Equity—Injunction—Harmless error.*

4. A decree should not be made, or an injunction granted, against one who has not done, and does not intend to do, the wrong of which complaint is made.

5. The rule that a harmless error will not call for a reversal does not apply to the case of a decree entered or injunction granted against one who has not done, and does not intend to do, any wrong. On this point, Jessop v. Kittaning Borough (No. 1), 225 Pa. 583, is overruled.

*Road law—Plan of lots—Private easement—Private streets.*

6. One who does not own property included in a plan, prepared for the purpose of selling the lots appearing thereon, cannot assert a private easement over private streets appearing on the plan.

7. Under proper circumstances, every lot owner on such a plan, whether or not he is an abutter on the particular street, has a right to object to any one obstructing it.

*Boroughs—Road law—Streets—Jurisdiction of borough—Plan of lots—Private easement—Way of necessity—Act of April 3, 1851, P. L. 320.*

8. By section 27, clause IV, of the Borough Act of April 3, 1851, P. L. 320, streets which have been duly opened according to law, or by agreement of parties, in boroughs organized under or accepting the provisions of that statute, became public highways over which the boroughs are directed to exercise the jurisdiction therein provide.

9. Even though a property has been sold according to a plan on which streets are plotted, the purchaser does not acquire a private easement over such of those streets as are opened public highways at that time.

10. If, at the time of his purchase, the streets on the plan are not opened public highways, but are plotted as such, the vendee, if they are afterwards opened and later vacated by the municipal authorities, becomes entitled to a way of necessity only, and this right is satisfied if he has access to his property over other streets.

*Boroughs—Public service company—Occupation of street—Vacation of street—Remedy of company—Viewers—Acts of April 3, 1851, P. L. 320, and May 14, 1915, P. L. 312.*

11. A public service company which has occupied a street, not specifically named in the consenting ordinance, but only by virtue of a general power to occupy the streets of the municipality, cannot enjoin the vacation of part of one of the streets occupied by it. If legally injured, its remedy is before the viewers appointed to assess the damages caused by the vacation.

12. Section 27, clause II, of the Borough Act of April 3, 1851, P. L. 320, 326, and chapter VII, article 1, section 9, of the General Borough Act of May 14, 1915, P. L. 312, 393, provided an exclusive remedy to those claiming to be injured in consequence of any ordinance, regulation, or act done, or purporting to be done, by virtue of the provisions of those statutes.

13. Under those acts, the exclusive remedy for such grievances is in the court of quarter sessions, as therein provided, and not by an equitable proceeding in the court of common pleas.

Argued May 4, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 178 and 200, Jan. T., 1926, by defendants, from decree of C. P. Crawford Co., Feb. T., 1923, No. 2, on bill in equity, in case of Titusville Amusement Co., Robert A. McKie et al. v. Titusville Iron Works Co., City of Titusville et al. Reversed.

Bill for injunction. Before PRATHER, P. J.
The opinion of the Supreme Court states the facts.
Decree for plaintiffs. Defendants appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Charles H. English,* of *Brooks, English & Quinn,* with him *A. W. Thompson* and *Donald C. Thompson,* for appellant.—The land alleged to have been subdivided, and on which streets and alleys were laid out, was, at the time of such alleged subdivision, within the lines of the incorporated Borough of Titusville. Gailey v. Wilkinsburg Trust Co., 283 Pa. 381, is authority that the municipality had the exclusive right to vacate any such streets within its lines and to extinguish the easement of passage in the lot owners.

Prior to the sale by E. H. Chase of any of the lots in the alleged subdivision to any of the plaintiffs in this case or their predecessors in title, all of the streets included in such alleged subdivision were located if not opened public thoroughfares adopted by and subject to the control of the borough. Plaintiff therefore did not purchase relying on implied covenants made by his grantor. But he purchased with notice that the streets and alleys were adopted by the borough authorities as public highways, and that the borough had authority to vacate and close the same: Tesson v. Porter, 238 Pa. 504; Bell v. Steel Co., 243 Pa. 83.

The portion of Washington Street vacated by ordinances of the City of Titusville was not necessary to the enjoyment by plaintiff of his lot in the alleged subdivision though it might be convenient to its use and

therefore plaintiff had no rights different from the rights of the public generally: Eastburn Road, 10 Pa. Dist. R. 595; Hawkes v. Phila., 264 Pa. 346.

*J. V. Frampton,* with him *C. W. Benedict* and *J. H. Courtney,* for appellees.—The portion of Washington Street proposed to be closed pursuant to ordinance, having been originally located, opened and dedicated as a public street by Chase for the benefit of the public and the purchasers of lots laid out on the map of the E. H. Chase Addition to the town of Titusville, cannot be closed by any person or the municipality, for private use: Tesson v. Porter, 238 Pa. 504.

A city has power to vacate streets only for the public good: Ormsby Land Co. v. Pittsburgh, 276 Pa. 68; Penna. Mut. Life Ins. Co. v. Phila., 242 Pa. 47.

OPINION BY MR. JUSTICE SIMPSON, June 26, 1926:

In 1922, the City of Titusville passed an ordinance reciting that, "for the public good and benefit of the said city," a specified portion of Washington Street "is hereby vacated and closed as a public street"; following which, a jury of viewers was appointed to assess the damages and benefits thereby caused. Shortly thereafter the Titusville Amusement Company, Robert A. McKie and the United Natural Gas Company, filed the bill in equity in this case, against the city, its mayor, its councilmen and the members of the board of viewers. At a later date, Albert E. Hobart was allowed to intervene as a party plaintiff.

The bill averred that in 1861, the then owner of a tract of land,—which included that part of the city through which ran the vacated portion of Washington Street,—had the tract surveyed and a plan thereof made; that certain streets appeared on the plan, with lots fronting on them, which lots were thereafter sold and conveyed by the lot numbers, as well as by description; whereby, as plaintiffs alleged, "there was an irrevocable

dedication of all the streets......shown on said plan
to public use......[the grantees taking] from said
grantors by implied covenant the right to have
the......[streets] remain and be left open forever
for the use of the public and for their own use, the
easement thus created [being] appurtenant to every
lot and a property interest or private contract right
[with].......all purchasers of said lots." The bill
further averred that, at the time the plan was made, so
much of Washington Street as appeared on the plan,
was not then a public street, and that some lots were sold
before and some after it was accepted as such; that the
vacation was at the instance and for the benefit of the
Titusville Iron Works Company (which owns property
on both sides of the vacated portion of Washington
Street, and whose ownership of it is derived through
conveyances made in accordance with said plan), in
order that it might be able, as it intended to do, to take
possession of the vacated portion of the street, and
build thereon and thereover, thus excluding plaintiffs
from any use of the street. The bill prayed an injunc-
tion to prevent each and all of the defendants "from in
any manner howsoever acting or proceeding under or in
pursuance" of said ordinance, and the Titusville Iron
Works Company "from in any manner howsoever taking
or holding possession of, or obstructing or constructing
any structure or building on, over or upon any part of or
all of that portion" of the street specified in the ordi-
nance.

The case proceeded in due course; after answers were
filed and a trial had, the court below decided the city
had the right to vacate, but not to close the street, and
entered a final decree perpetually enjoining all the de-
fendants "from in any manner howsoever acting or pro-
ceeding under or in pursuance of [said] ordinance......
for the closing of the street"; the Titusville Iron Works
Company "from in any manner howsoever taking or
holding possession of, or constructing any structures or

566 TITUSVILLE A. CO. et al. *v.* TITUSVILLE I. CO., Aplnts.

Opinion of the Court. [286 Pa.

buildings on, over, or upon or obstructing or occupying any part or all of [the vacated] portion of Washington Street"; the mayor and councilmen "from in any manner howsoever doing any act or thing pursuant to said ordinance concerning the closing of said portion of Washington Street"; and the members of the board of viewers "from in any manner howsoever doing any act or thing or performing any duty under the order of court appointing them......[so far as related to] the proposed closing of said street pursuant to said ordinance." From this decree, the City of Titusville and the Titusville Iron Works Company have prosecuted these separate appeals; and, in considering them, we will exclude, for the present, all reference to the United Natural Gas Company, whose status and rights will be passed on hereinafter.

Save the averment as to the passage of the vacating ordinance, the bill does not allege, nor does the evidence show, anything done, or proposed to be done, by the city or its officials, from which injury to any of the plaintiffs could possibly arise. The ordinance only provides for the vacation of the street "as a public street," leaving undisturbed whatever private rights, if any, plaintiffs may have because of the sale of lots according to the plan. They strenuously contended, however, both below and here, that sustaining the ordinance would result in the taking of private property (e. g. the private easement above referred to) for private use; but this is an evident mistake, so far as concerns the city and its officials, for, as already shown, the vacation was only "as a public street," and with nothing else had or have these particular defendants anything to do. The city could not irrevocably bargain away the right and duty to vacate, when occasion required it, even for a valuable consideration, any more than it could, under like circumstances, barter away its power to open streets: Penna. Hospital v. Phila., 254 Pa. 392; affirmed on appeal in 245 U. S. 20. Moreover, we have here not only

the recital in the ordinance that it was passed "for the public good and benefit of the said city," a declaration "entitled at least to great respect" (Block v. Hirsh, 256 U. S. 135) ; but, beyond and above this, the courts do not inquire into a municipality's purpose in doing that which it has a legal right to do: McGee's App., 114 Pa. 470, 477; Scott v. Pittsburgh, 266 Pa. 52; Phila. v. T. B. Rice & Sons Co., 274 Pa. 256; Redstone Township School District, 284 Pa. 325. Penna. Mutual Life Ins. Co. v. Phila., 242 Pa. 47, does not militate against this view, for there the question raised and decided was whether or not a statute, authorizing the taking of land, was unconstitutional, since it was to be taken to be resold to private parties, and hence could not possibly be a taking for public use. Here, however, the ordinance does not authorize the taking of anything, but only the giving up of the city's rights in "a public street," without reference to any other rights in or over the soil thereof; and hence, in the absence of a controlling statute, the consequential loss, if any, must be borne by those who suffer it: McGee's App., supra.

It follows that the decree should not have been entered against the city, or its mayor and members of council, and would, for the reason stated, be reversed, so far as concerns them, though sustained as to the other defendants, were it not for our conclusion that it must be reversed generally. We are not unmindful that, in Jessop v. Kittanning Borough (No. 1), 225 Pa. 583, the municipality's appeal from an injunction was dismissed, because the real wrongdoer was decreed to pay the costs, and, it was said, the borough, though innocent, was not harmed by the injunction, if it did not intend to do the thing which it was enjoined from doing. It is clear to us, however, that this is a palpable misapplication of a well settled legal principle. The fact that the borough was not awarded the statutory costs allowed to it, was in itself a financial hurt, but the objection to the conclusion there reached is far greater. If a plaintiff may

charge two defendants with actual or premeditated wrong, he may charge a hundred, and, on appeal, may sustain an injunction against all, or any of the innocent parties, whether or not one or none of the others has been guilty of wrongdoing; for the same supposed absence of harm would appear in any and every such event. A decree awarding an injunction against an innocent party is, in and of itself, a harm to him, calling for reversal; for he is required to defend himself against a charge of actual or intended wrongdoing, and, when he successfully does so, he is enjoined exactly as if the charge had been proved. Surely this is indefensible. Our Brother Frazer, when sitting in the common pleas, in O'Donnell v. Pittsburgh, 234 Pa. 401, followed the true practice, which is to enjoin the guilty party only.

What has been said, narrows the present controversy to one between plaintiffs and the Titusville Iron Works Company, which claims the right to build on and over the vacated portion of the street. In antagonism to this claim, plaintiffs rely on the general rule set forth in their bill, as above quoted, viz: that as their predecessors purchased according to a plan upon which Washington Street, then an unopened private street, was plotted, that street, while it may be vacated as a public highway, cannot be closed, nor their private easement over it be impaired, without their consent. The rule, even as thus stated, has no applicability, however, to the Titusville Amusement Company and Robert A. McKie, for those two plaintiffs do not own any property which was embraced within the plan; and for this reason the bill should have been dismissed so far as concerns them. The property of Albert E. Hobart, the intervening plaintiff, is on the plan, however, and his predecessors in title purchased directly from Mrs. Chase, for whom the plan was prepared. True, his lot does not abut on Washington Street, but this fact alone will not operate to deprive him of the right to complain. Under proper circumstances, every lot owner on a plan, whether or not he is

an abutter on the particular street, has the right to object to any one obstructing it: Garvey v. Harbison-Walker Refractories Co., 213 Pa. 177; O'Donnell v. Pittsburgh, 234 Pa. 401; Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., 240 Pa. 519. We are therefore required, in order to determine Mr. Hobart's rights in the premises, to ascertain the relevant facts, and apply to them the applicable legal principles.

In 1816, Jonathan Titus owned a large tract of land upon part of which the City of Titusville now stands. In that year, he laid out the Village of Titusville, and had it surveyed, and a plan of the lots and streets made. His plan did not include the property which is the subject of this controversy; but Washington Street, which appeared on it, extended nearly or quite to the edge of that property. By the Act of March 6, 1847, P. L. 224, the village was incorporated as a borough, and commissioners were named to survey, define and mark its boundaries, within which was included all the property under consideration here.

In 1853 and 1854, Jonathan Titus conveyed to his daughter, Sarah Ann Chase, certain tracts of land within the borough, just below the southern line of the original village. On March 25, 1861, she approved a plan of so much of her property as was located between what was known as the Mill Race and Oil Creek. This plan was named the "E. H. Chase Addition to the Town of Titusville"; for convenience we shall call it the Chase Plan. Washington Street, including the part here vacated, appeared on it, as a direct extension of the street already opened in the built-up portion of the borough. Her first deed of any part of that property was executed September 14, 1861, and recorded February 10, 1862. It did not describe the land purchased by reference to either the lot numbers on the plan, or to the streets plotted thereon, but started at a given distance from a white walnut corner, and continuing by courses and distances to the place of beginning. Apparently it gave to the

grantee no express right to use any of the streets on the plan, but contained a provision "excepting and reserving for the use of a public street all that part of the said land which would be included and which is now marked out on the [Chase Plan]......as Washington Street." It is clear, therefore, that the intention was not to grant a private easement over Washington Street, but to tender it as a public street, thereby vesting in and imposing upon the grantee, and on future purchasers of lots according to the plan, all the rights and limitations which grew out of that fact. Mr. Hobart, whose predecessor's title arose long subsequent to that date, was affected by what appeared in that deed, since it was directly in his line of title from the same grantor.

On August 15, 1861, by decree of court, duly entered on the petition of the borough, it was given leave to accept the benefits of the Borough Act of April 3, 1851, P. L. 320. Section 27, clause IV, of that statute (page 327) provides that streets "when duly opened according to law, *or by agreement of parties,* are hereby declared public highways, over which the corporation shall exercise jurisdiction under the provisions of this act." This operated as an acceptance of Mrs. Chase's tender, hereinbefore referred to, and Washington Street became a public street, as she intended it should be. At that time she still owned the lot which now belongs to Mr. Hobart, and hence its later sale by her was necessarily subject to the effect of that acceptance. Thereafter the borough seems to have taken charge of the street, for we find the borough employees clearing out its gutters and filling up its center, for the purpose of making proper drainage, exactly as is done in regard to opened public dirt roads elsewhere; and, on August 25, 1864, the borough council directed "that a crossing be constructed across Washington Street" within the territory covered by the plan.

In 1865, the borough council employed the town surveyor to survey and prepare a map showing all the streets in the borough. This he did, using, inter alia, the

Chase Plan, and made a report to the council, which body, on December 18, 1865, resolved that the "town surveyor's new map of the Borough of Titusville be adopted as the official map of the borough and ordered on file." At the instance of plaintiffs, the court below decided that the "municipality, by said resolution, thereby accepted and adopted said E. H. Chase plan of lots and streets as an addition to the municipality, now City of Titusville." As Washington Street was on the "town surveyor's new map......[thus] adopted as the official map of the borough," exactly as it appeared on the Chase Plan, and was actually being used as a public street, it necessarily follows that, by the resolution, the borough either "accepted and adopted" the street as an open public street, or "accepted and adopted" it as a projected public street not yet legally opened. If the former, then when Mr. Hobart's predecessor in title purchased, some eighteen months later, he bought a property which had no private easement over Washington Street, and hence none could arise when it was later vacated: Tesson v. Porter Co., 238 Pa. 504; Bell v. Pittsburgh Steel Co., 243 Pa. 83; Stoever v. Gowen, 280 Pa. 424. If the latter contingency resulted, then the subsequent purchase of the Hobart lot was with notice that the projected street might be legally opened at a subsequent date (as it admittedly was by the city ordinance of April 25, 1869), and the only thing which Mr. Hobart became assured of, on a subsequent vacation, was a right of way "limited to one reasonably necessary to the enjoyment of the lot sold; if another [way] is open, the easement is lost of necessity": Gailey v. Wilkinsburg Real Estate Trust Co., 283 Pa. 381, 386. The other way to which he was entitled, he had by the street on which his lot actually abutted, and the other highways connected therewith In either event, therefore, for this reason also, he had no right to object to the vacation of the portion of Washington Street under consideration, or to the building which the Titusville Iron Works Company pro-

572 TITUSVILLE A. CO. et al. *v.* TITUSVILLE I. CO., Aplnts.

Opinion of the Court.                [286 Pa.

poses to erect on and over it. In this aspect of the matter, it is of no consequence that Mrs. Chase had sold some of the other lots on her plan, before the adoption of the borough resolution of December 18, 1865. The owners of those lots are not here complaining, and Mr. Hobart cannot be heard to assert their rights in this regard, if any they have.

The only other plaintiff is the United Natural Gas Company, which is not an owner of property in the Chase Plan, but whose complaint is based on a separate and distinct ground from that applicable to any of the other plaintiffs. No objection is made to the joinder, however, and hence we need not consider whether it was legally allowable. The evidence regarding the status of this company is meager, and the findings not less so; but sufficient is stated to show that its complaint cannot be sustained. It averred and proved that the city council had given to the Oil City Fuel Supply Company (a predecessor in title of this plaintiff) the right "to lay pipes and connections in and through the streets, alleys and highways of the City of Titusville, for the purpose of supplying natural gas to consumers"; that prior to 1922 such pipes had been laid along Washington Street, under the portion vacated by the ordinance of that date; and that to remove those pipes would cost "from approximately $4,000 to approximately $8,000, depending on the system of piping adopted." Assuming that it will be necessary to remove the pipes from under the vacated part of the street, the gas company's business would not be materially affected by so doing, and the cost to it, even if its own figures are accepted, would not be serious. To sustain its claim here would be serious, however, for, except in rare instances, the municipalities of the State would be debarred from vacating even a fractional portion of most of their streets, because of their occupancy by public service companies.

Moreover, it is not averred that, in the consenting ordinance, Washington Street was named, or that the

city by any act (even if she could do so) had estopped herself from vacating the street. Hence, the right and duty so to do, when the public interests required it, still existed. In New Orleans Gaslight Co. v. Drainage Commission of New Orleans, 197 U. S. 453, 462, where plaintiff had an exclusive right of vending gas in the city, it was compelled, at its own expense, to relocate its pipes, when the city changed certain of its streets, to enable it to establish a new system of drainage. After considering at some length, the question involved, the Supreme Court of the United States said: "The gas company, by its grant from the city, acquired no exclusive right to the location of its pipes in the streets, as chosen by it, under a general grant of authority to use the streets. The city made no contract that the gas company should not be disturbed in the location chosen. In the exercise of the police power of the State, for a purpose highly necessary in the promotion of the public health, it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public works. In complying with this requirement, at its own expense, none of the property of the gas company has been taken, and the injury sustained is damnum absque injuria." Our own cases are to the same effect: American Telegraph & Telephone Co. v. Millcreek Township, 195 Pa. 643; Scranton Gas & Water Co. v. Scranton, 214 Pa. 586; Duquesne Light Co. v. Pittsburgh, 251 Pa. 557; City of Easton v. Miller, 265 Pa. 25. In the instant case, the vacation has eliminated a dangerous grade crossing, which is universally conceded to be a proper subject for the exercise of the police power (Tiedeman's Limitations of Police Power, 599), a conclusion this court stated upwards of half a century ago (Pittsburg & Connellsville R. R. Co. v. Southwest Penna. Ry. Co., 77 Pa. 173), and to which it has consistently adhered ever since. In any event, for any damages legally recoverable, the gas company has a full opportunity to establish its right before the board of viewers

appointed to assess the damages occasioned by the vacation of the street, and, if necessary, on appeal from the award of that body.

The cases cited by plaintiffs are wide of the mark. In each of them, the municipality had consented to the use of its streets, and, on the faith thereof, the utility had expended a large sum of money. Later the city attempted to forbid all further use of any of the streets. It was held this could not be permitted. None of those authorities assert, as is claimed here, that a city cannot readjust any part of its plan of streets, however slight may be the injury to the public service company occupying them. It is safe to say that no court will ever so decide.

The right to vacate being established, it follows that the gas company has no standing to object to the erection of a building by the Titusville Iron Works Company, on and over the part vacated. When its pipes were laid, the gas company knew, for it was bound to know, that the city could vacate this part of the street, subject to whatever legal liability, if any, would arise from so doing; and that, in such a contingency, the owner of the soil, theretofore subject to the public easement, could thereafter do with it as he pleased since it was his property.

Besides, plaintiff cannot be permitted to make complaint in this proceeding, because of section 27, clause II, of the Borough Act of April 3, 1851, P. L. 320, 326, which, as we have already shown, became part of the charter privileges of the city, long before it consented to the gas company's use of the streets. That section provides that "Complaint may be made to the next court of quarter sessions of the proper county, by any person, ...... [having] any grievance in consequence of any ordinance, regulation, or act done or purporting to be done in virtue of this act; and the determination and order of the said court therein shall be conclusive." This provision is, with immaterial changes, the same as

chapter VII, article I, section 9, of the General Borough Act of May 14, 1915, P. L. 312, 393. In Whitney v. Jersey Shore Borough, 266 Pa. 537, and Wright v. France, 279 Pa. 22, we held that the remedy there specified is exclusive. The gas company made no objection in the way thus provided, however, and hence it cannot be heard so to do in this proceeding, for the jurisdiction to determine the question was in the court of quarter sessions, and not in the court of common pleas, which is the tribunal invoked in this case.

The decree of the court below is reversed, and plaintiffs' bill in equity is dismissed at their costs.