## McKee *versus* Perchment.

1. Aiken in a plan of lots, laid out an alley between the rear of two tiers and conveyed the lots, ninety-four feet in depth as bounding on the alley, to different persons, with use of the alley to each. The alley could not be abandoned without the consent of all the lot-holders.

2. In an action by a lot-holder against another for obstructing the alley by a building, the defendant gave evidence that erections had been made up to the centre of the alley, and maintained for twenty-one years or more. *Held*, that the plaintiff might show by the acts and declarations of different former proprietors of the lots, that such occupation was for temporary purposes.

3. The deed to defendant from a former grantee described the lot as ninety-four feet deep " with the use of the alley." This was not a *recital* in the deed, but a description of the thing granted; and even if defendant's grant-

[McKee v. Perchment.]

or had acquired title to the soil by abandonment, it was not conveyed to the defendant.

4. The plan of lots was not recorded, but was referred to in the deeds; this was notice to the defendant of the existence of the alley.

October 9th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county*: No. 111, of October and November Term 1870.

This was an action on the case brought by John Perchment against Stewart McKee, on the 14th of May 1869, for obstructing the right of way, which the plaintiff claimed along the rear of lots owned by the defendant.

In 1844, David Aiken was the owner of a lot of ground in East Liberty, bounded on the north by the Greensburg turnpike, on the south by Shakespeare street, and on the east and west by opened alleys; being 120 feet front on Shakespeare street and the turnpike, and 200 feet between those two streets on the alleys; and being lots Nos. 15 and 16 of another plot of Alexander Thompson. On the 30th of July 1844, Aiken divided this lot into eight smaller lots, each of 30 feet front, four on Shakespeare street and four on the turnpike; with a depth of 94 feet to a 12 feet alley; this alley had never been opened or used as such. At and for sometime before the commencement of this suit, the two lots on the extreme west, one on Shakespeare street, and the other on the turnpike, were owned by the defendant, the next two further east on the turnpike were owned by the plaintiff. The defendant erected and maintained a stable on the 12 feet appropriated in the plot for the alley, thus closing the plaintiff's passage from the rear of his lot to the opened alley on the west.

The annexed draft exhibits the location of the lots, streets and alleys.

The case was tried, April 11th 1870, before Kirkpatrick, J.

The plaintiff proved the laying out of the lots as above stated. He gave in evidence deed, August 2d 1844, from Aiken to Archibald Falconer, for the lots owned by plaintiff, being part of lots 15 and 16 of Thompson's plan, and described as fronting 60 feet on the turnpike, by 94 feet deep, to a 12 feet alley. "Together with the free use of said 12 feet-alley, to be used by the said Falconer and his heirs and assigns as an alley or passage for ever, to have and to hold the said piece of ground, 60 feet on the turnpike, by 94 feet back, and the use of a 12 feet alley." Deed, December 2d 1845, from Falconer to James Twist for part of lot 15, 30 feet front on the turnpike, "by 94 feet back, with the use of a 12 feet alley." Deed, December 4th 1845, Falconer to Thomas Newell for the remaining 30 feet, part of lot 16 on the turnpike. Deeds, Newell to McGowan, dated June 11th 1859, and Twist to McGowan, dated July 24th 1859, each for the 30 feet

[McKee *v.* Perchment.]

North.

Greensburg Turnpike.

McKee from Keeling.    Perchment.    Falconer.

Alley.    Alley.    Alley.

West.    Alley.    East.

McKee from Sprague.    Formerly Huddle.    Wool slayer.

Shakespeare Street.

A, B, C, D.   No. 15.
B, D, E, F.   No. 16.

South.

belonging to the grantors respectively. These three deeds contain the same reference to the alley : Deed, McGowan to the plaintiff for the whole 60 feet, " To have and to hold said pieces or parcels of land, 60 feet on turnpike by 94 feet back, and the use of a 12 feet alley." Deed, Aiken to Deborah Keeling, dated June 3d 1841, for 30 feet on the turnpike, " 94 feet deep to a 12 feet alley. Being one-quarter part of lot No. 15, after said alley laid out by David Aiken was taken off lots Nos. 15 and 16, the free use of which as an alley or passage is granted and confirmed to the said Deborah Keeling and her heirs and assigns for ever." This lot is one owned by the defendant. Plaintiff gave evidence that the defendant had erected and maintained a stable up to the centre line of the 12 feet reserved for the alley.

The defendant gave in evidence, deed, dated June 7th 1841, Aiken to Joseph Graham, one-quarter of lot 15, beginning at an alley, &c., 106 feet from the turnpike and running by an alley laid out by Aiken, " in the centre across lots No. 15 and 16 towards No. 16, 30 feet, thence 94 feet to Shakespeare street, being one-quarter of lot No. 15 after the said alley laid out by Aiken, was taken off lots 15 and 16, the free use of which as an alley or passage is hereby granted and confirmed to Joseph Graham aforesaid, his heirs and assigns for ever." Graham conveyed this lot to Twist ; Twist to Gamble ; Gamble to Sprague ; Sprague conveyed to the defendant on the 3d of February 1857, describing the lot (as in former deeds), as 94 feet deep to the alley ; all the deeds containing the privilege of the alley in substantially the same terms as in Graham's deed.

On the 10th of February 1851, Deborah Keeling conveyed her lot to William McKee and the defendant, as described in Aiken's deed to her, " with a right to the use of the said alley."

W. Woolslayer, who since 1840, had been the owner of 60 feet, part of No. 16 on Shakespeare street and resided on it, testified that he had built a fence in the centre of the alley, which stood there until a year previously, when the plaintiff had removed his fence ; all those who occupied west of witness had joined fences with him ; the fence had been built the entire length through the centre of the alley and had stood there for twenty to twenty-five years. Falconer who owned part of No. 16, north of witness on the turnpike, built a stable to the centre of the alley shortly after witness had built his fence. Mrs. Keeling had built a fence along the centre of the alley about the same time. Falconer's stable was not removed until plaintiff moved his fence ; the defendant rebuilt the fence erected by Mrs. Keeling ; witness planted trees and cultivated up to his fence for more than twenty-five years ; Falconer's stable and the coal-house of witness closed the alley ; Mrs. Keeling had a stable which stood at the centre of the alley ; the defendant enlarged it by building over the top of it : other out-

[McKee *v.* Perchment.]

buildings were erected by the different owners of lots to the centre of the alley; witness had never heard of any one asking for the alley until the plaintiff came.

A number of other witnesses, including the defendant, testified substantially as Woolslayer: all concurring that there had been no demand for opening the alley until the plaintiff made one after becoming the owner of his lot.

The plaintiff called Ann Huddle, the widow of Henry Huddle, who had owned 30 feet on Shakespeare street part of lot 16, south of plaintiff's lot and the alley, and east of defendant's lot. Her husband had bought the lot twenty-seven years before, and had occupied it fourteen years.

The plaintiff proposed to prove by her that there was an understanding between the owner or owners of the lots in Aiken's subdivision of lots that the alley might be used and cultivated to the centre thereof, until its use as an alley would be required by an adjoining owner, for the purpose of rebutting the alleged adverse enjoyment and abandonment, and to explain the defendant's testimony as to the occupancy of the alley. The offer was objected to by the defendant, allowed by the court and bill of exceptions sealed.

The witness testified that her husband a long time before had intended leaving the alley open, but at the request of some of the lot-holders had joined them in making the fence, with the understanding that the alley should be opened when called for. She also testified: "I heard Mr. Huddle say that he put the fence on the line with the understanding that it was to remain there until the alley would be called for, when it would be opened."'

They called Charlotte Reynolds, who under objection by defendant and exception, testified to similar facts. Part of her testimony was as follows: "Mr. and Mrs. McGowan, and William Woolslayer and myself, all talked of the subject of opening the alley. Mr. and Mrs. McGowan said they would leave it open if it was not for creating hard feeling. Mr. Woolslayer opposed it. He opened it afterwards when my husband opened ours."

The plaintiff gave other evidence to rebut the presumption of abandonment of the alley by the lot-owners.

The following are points of the defendant with their answers:—

2. If the jury find that Archibald Falconer (under whom plaintiff claims) did about the year 1845 join with the other lot-holders in building a fence through the middle of said alley, the entire length thereof, and otherwise obstructed the same by erecting side fences and a stable or other buildings up to the centre, and covering a portion thereof, and that this state of things so continued until after the plaintiff purchased from McGowan in 1869, the plaintiff cannot recover in this action.

Answer: "Affirmed, unless you find from the acts and declara-

tions of the parties, which you will discover from the evidence of the case, if discoverable, that the intention in so obstructing the alley was merely temporary, and not permanent, and to be removed thereafter whenever required."

3. If the court refuse to charge, as requested in the 2d point, then they are requested to charge that if the jury believe that Archibald Falconer, in or about the year 1845, obstructed the said alley along the lots now owned by plaintiff, by erecting a fence and buildings up to, and through the middle of said alley, and cross fences to the centre thereof, with the intention on the part of said Falconer to abandon the use of said alley as such, and that these fences, &c., so continued from that time to the date of plaintiff's purchase in 1860, then the verdict must be for the defendant, and especially so if the jury believe that the defendant was led by this appearance of things to erect a stable and other improvements upon the site of said alley, on his own premises, under the belief that the same had been permanently abandoned.

Affirmed.

4. If the jury believe that the defendant erected upon the site of the alleged alley a stable and other improvements, and that Peter McGowan, the then owner of the lots now owned by plaintiff, and through whom plaintiff claims title, stood by and knew of said erections being made, yet made no objections to them, nor to the obstruction of said alley by them, then McGowan would be estopped, so far as regards the defendant, from claiming a right of way over the site of said alley so obstructed, and the plaintiff, claiming title through McGowan, would in like manner be bound and estopped.

Answer: " Affirmed, if you find from all the evidence in the case that there was no agreement or understanding between these parties to the contrary; that is to say, if McKee by this conduct, intended to destroy the alley, and McGowan knew of this intention at the time."

6. Recitals in deeds estop only parties and privies, and the plaintiff being a stranger to the deeds in defendant's claim of title, cannot take advantage of the recitals therein to estop the defendant from claiming and setting up that said alley or right of way was abandoned, or that it was extinguished by adverse user.

Answer : " Refused under the evidence of this case, whilst true as an abstract proposition. A party buying by a recorded plan, with street and alleys appertenant, would be entitled to all these privileges. The object of record is notice, and notice can be brought home without this record. The fact of notice is for the jury. All the deeds from Aiken call for this alley."

8. The declarations of Mrs. and Mr. McGowan, as sworn to by Mrs. Charlotte Reynolds, witness for plaintiff, should be entirely disregarded by the jury.

9. The declarations of Henry Huddle, as sworn to by Mrs. Ann Huddle, are irrelevant and incompetent, and should be disregarded by the jury.

Answer: "Refused. We submit them to the jury as competent evidence. You will give them such credit and attach to them such and only such credit as you think them entitled to. This may be much, little, or nothing at all."

The verdict was for the plaintiff for 6 cents damages.

The defendant took a writ of error from the Supreme Court. He there assigned for error:—

1, 2. The admission of the testimony of Ann Huddle and Charlotte Reynolds.

3, 4, 5, 6. The answers respectively to the defendant's 4th, 6th, 8th and 9th points.

7. The answers of the court to the defendant's 2d, 3d, and 6th points are contradictory and calculated to mislead the jury.

*T. C. Lazear* (with whom was *J. R. Hopkins*), for plaintiff in error.—If a judge's charge is contradictory, and misleads the jury, it is error: Selin *v.* Snyder, 11 S. & R. 324; Sampson *v.* Sampson, 4 Id. 333. As the plaintiff and those under whom he claims, are entire strangers to those deeds, the defendant is not thus estopped in plaintiffs' favor, by any recitals contained therein: 2 Washburn on Real Estate, 479; Miller *v.* Holman, 1 Grant's Cases 243; Doe *v.* Errington, 6 Bingh. N. C. 79; Jackson *v.* Bull, 1 Johns. Cases 90; Jackson *v.* Brinckartoff, 3 Id. 103; Jackson *v.* Bradford, 4 Wend. 623; Corning *v.* Gould, 16 Id. 531.

Twenty-one years' occupation of land, adverse to a right of way and inconsistent with it, bars the right: Yeakle *v.* Nace, 2 Whart. 123; Crain *v.* Fox, 16 Barb. 184; 2 Kent's Comm. 602; Taylor *v.* Hampton, 4 McCord 96; Sizer *v.* Devereux, 16 Barbour 160; Cox *v.* Freedley, 9 Casey 124.

*J. Mellon* (with whom was *S. A. McClurg*), for defendant in error, cited Union Burial Ground *v.* Robinson, 5 Wharton 18; and note to Dovaston *v.* Payne, 2 Smith's Leading Cases 219; Kirkham *v.* Sharp, 1 Wharton 323; Cope *v.* Grant, 7 Barr 488; Lindsay *v.* Lindeman, antea, p. 93.[1]

The opinion of the court was delivered, October 16th 1871, by SHARSWOOD, J.—The alley, which was the subject of controversy in this action, was laid out originally by David Aiken through the centre of two large lots which he owned, lying between the Greensburg and Pittsburg Turnpike Road and Shakespeare

---

[1] See Hall *v.* McCaughey, 1 P. F. Smith, 43.—Rep.

street, in the village of East Liberty, Allegheny county. The distance from the road to the street was 200 feet, and he divided the whole into several lots fronting on each, with a depth of 94 feet, leaving 12 feet for the alley in question. Over these 12 feet there was an express grant by him to each purchaser of an easement only. The principal defence set up on the trial was that the easement had been abandoned. It is plain that no one proprietor could do this. All the grantees of lots had an equal interest, and it required the concurrence of all. An enclosure upon any part of it would have been a disturbance of all, as it had an outlet at both ends. The defendant below and plaintiff here undertook to make out the defence by proving that it had been enclosed on each side by a fence built through the middle of it; that stables, coal-houses, privies had been erected, and trees and bushes planted on the soil over which it would otherwise have run. Now certainly, to rebut this evidence, it was entirely competent for the plaintiff below to prove by the acts and declarations of the different proprietors that the occupation and use of it in the manner stated were for temporary purposes only and not with any intention to abandon the easement. This disposes of the 1st, 2d, 5th and 6th assignments of error.

The 3d assignment complains of the answer of the learned judge below to the defendant's 4th point, that if the grantor of the plaintiff stood by and saw the defendant erect a stable and other improvements on the site of the alley, he and the plaintiff claiming under him would be estopped from setting up any title to the easement. This the learned judge affirmed, with the qualification that there was no agreement or understanding between the several persons entitled to the privilege of the alley that erections of such a character might be made temporarily without prejudice to the right of any of those in whom the easement was vested to require the opening of it at some future day whenever it might become desirable. This is the proper interpretation of the language of the answer, and was a correct and necessary qualification of the point in view of the evidence which had been given in the cause by both the plaintiff and the defendant.

The 4th error assigned is to the answer of the learned judge to the 6th point of the defendant below, which was, that "recitals in deeds estop only parties and privies, and that the plaintiff, being a stranger to the deeds in the defendant's chain of title, cannot take advantage of the recitals therein to estop the defendant from claiming and setting up that said alley or right of way was abandoned, or that it was extinguished by adverse user." This was properly refused under the evidence in the cause. The deed, which the defendant had given in evidence and under which he claimed, from Peter Sprague and wife, dated February 4th 1857, conveyed to him the lot as 94 feet in depth to the line of the alley,

"with the free use of said alley as laid out by David Aiken through lots Nos. 15 and 16." This was not a recital in any sense of the word but a description of the thing granted. Even, therefore, if Peter Sprague had title to the soil of the alley, either by previous abandonment of the easement by those in whom it had been vested or by adverse user, it is clear that he did not grant it to Stewart McKee. He chose to restore it as he had a perfect right to do, so far at least as his lot was concerned, to its original condition as an alley or easement merely; and Stewart McKee, having accepted that conveyance, must show an extinguishment or adverse user subsequent to its date. The rule then that recitals in deeds are only binding on parties and privies, though it may have been true as an abstract proposition, had no application to the case. Though David Aiken's plan was not recorded, the reference to it in this deed was notice to the defendant of its existence and of the alley laid down on it.

In regard to the 7th assignment of error, we perceive no such inconsistency or contradiction in the answers of the learned judge below as is pretended or anything calculated to mislead the jury.

Judgment affirmed.