## A. C. SLOAN v. J. M. BALLENTINE ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY.

Argued October 13, 1890—Decided November 3, 1890.

In trespass, for the removal of fences of the plaintiff's farm, the jury having found upon sufficient evidence, properly submitted, that the locus in quo of the trespass was upon a public alley about the lots of the defendant in a town laid out by the plaintiff's predecessor in title, the existence and location of which alley were known to plaintiff when he purchased, he was not entitled to recover.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS. MC-COLLUM and MITCHELL, JJ.

No. 41 October Term 1890, Sup. Ct.; court below, No. 130 March Term 1888, C. P.

On January 5, 1889, Alexander C. Sloan brought trespass against Joshua M. Ballentine and Lucinda Ballentine.	Issue.

At the trial on December 3, 1889, the trespass shown was the removal by defendants of a gate from a fence of the plaintiff, and also of part of another of plaintiff's fences.	The fence, of which the gate formed a part, reached to the rear of a town lot owned by the defendants, the gateway being wholly within fifteen feet of defendants' lot fence.	The portion of the other fence removed was along a public highway or street, and reached to the line of another lot of defendants, adjoining the former, and was wholly within fifteen feet of defendants' fence at the point where it reached the highway or street.	The removal of the gate and the part of the fence permitted cattle to enter plaintiff's fields, whereby injury was done to his grain, etc.

The defendants, in justification of the removal of the gate and fence, on the ground that they were obstructions to an alley way fifteen feet wide extending in the rear of both lots and around to the front of the one at which the fence was torn away, introduced testimony, in substance to the effect that in 1881, one Crissman, owning a farm embracing the land of the plaintiff and the lots of the defendants, laid out a town which he named Green Oak, with a fifteen feet alley in the rear of the two lots now owned by the defendants, and the plaintiff was present when the lots were surveyed and had knowledge of said alley; that on February 26, 1883, Crissman conveyed lot No. 13, the one from the rear of which the gate was removed, to J. M. Ballentine, one of the defendants, describing the lot as situate in the village of Green Oak and as bounded on one side by an alley; that on September 25, 1883, Crissman sold his farm to one Heastand, expressly reserving all the lots which were then sold in the village of Green Oak; that on February 28, 1885, Heastand sold to J. M. Ballentine lot No. 14, the one adjoining No. 13 and from the front of which the fence was removed; that on April 5, 1887, Heastand sold the remaining part of the farm to the plaintiff, who bought with full knowledge, from a draft in evidence and otherwise, that an alley of fifteen feet in width existed in the rear and on both sides of the defendants' lots.

Charge of Court below.

At the close of the testimony, the court, NEALE, P. J., charged the jury in part as follows:

[The plaintiff brings this action alleging that he was entitled to have his fences close up to or adjoining the rear of the lots of the defendant, and close up to the right hand side of the outer lot, probably you would call it the western lot of the defendant; that is, up to two sides of the defendant's lots. There is where the plaintiff claimed he had the right to maintain his fences, and to work the ground at those places along the defendant's lots; while the defendant seems to have thought otherwise. The plaintiff did erect and attempt to maintain his fences, and to work the ground up to those particular sides of the defendant's lots, within a foot of the rear of the defendant's fence, and probably within a foot of the defendant's fence at the side of his lot. There seems to be no doubt that the defendant by physical means threw down those fences which had been erected by the plaintiff, and by reason of that it is alleged that cattle got into the corn field.] [1] . . . . .

[The plot appears to show that the alleys were actually laid out off this main street at right angles, but the plot is silent as to the fact of the other alley being laid out, the alley at the rear of the front tier of lots; though, you can see by the plot that he describes an alley at the rear of those lots, fifteen feet in width, but the alley thus described as of fifteen feet in width is not plotted on the plot, nor laid out more than to be described as a fifteen foot alley. We will submit to you as a question of fact whether that was a sufficiently clear indication of an alley; whether in that point of view it was necessary to describe it in any other way.] [2] . . . . .

[It is claimed on the part of this defendant that there was to have been an alley there fifteen feet wide. That is not described on the plot. There is no description of that alley on the plot on this side of the lots. We have to call your attention particularly with respect to that to the testimony in the case. We may say to you, that when the owner of property makes sale of his property, lays it out in town lots in that way, and makes provision for alleys and streets, a person buying those lots buys them with such an understanding. It would be bad faith on the part of the person who sells the lots, with the understanding that there had been a dedication of so much

Charge of Court below.

of the ground for the purpose of streets and alleys, and then after the sale was made, to close up those streets and alleys. That would be bad faith, and a fraud upon the purchaser to do so. Now, what the grantor does in that respect, those who afterwards make a purchase from him are bound by his contracts, if they have notice of the fact.] [3] . . . . .

[It will be for you to say, under all the evidence in this case, whether there was a dedication of this ground to the public or not. If there was a dedication, and if actual or constructive notice of that fact was brought home to Mr. Sloan, he took the ground with knowledge that it was public ground, although not actually laid out. If that were so, and you so find it, he is bound by that notice, to the same extent exactly that the original owner would have been, because he has notice. If he did not have notice, he would not be. You will consider whether the owner was bound by that plot; whether he was bound to go and lay out finally those two alleys. As to the rear alley, he describes it as a fifteen foot alley, but makes no reference to the side alley; but he sold the lot with reference to the fact that there was an alley there, and declared it so himself that there was an alley.] [4] . . . . .

[Mr. Sloan would be bound in the same way, having notice that the original owner would be bound under his contract of sale, if it were a binding one. It would not be a binding one, only as far as the dedication of the alley, because for the transfer of land there must be written evidence; it must be in writing, or it comes under what is known as the statute of frauds. But alley ways and street ways are allowed to be dedicated to the use of the public. They do not require the same evidence that the sale of property requires, because the ownership of the ground so dedicated does not go out of the original owner, only so far as to the use which he gives to the public. He is one of the public himself, and has the same right to use it as any other citizen would have.] [5] . . . . .

The plaintiff requests the court to charge:

1. That the evidence on the part of the defendant, if believed, would not in law justify the defendant in assuming that there had been a dedication of an alley for the use of the public, on the rear of his lots and on the east side.

Answer: That point is refused, as explained in the general charge.[6]

Opinion of the Court.

—The jury returned a verdict in favor of the defendants. A rule for a new trial having been discharged, and judgment entered, the plaintiff took this appeal, assigning for error, inter alia :

1–5. The portions of the charge embraced in [ ] [1 to 5]
6. The answer to the plaintiff's point.[6]

*Mr. M. F. Leason* (with him *Mr. James H. McCain*), for the appellant.

Counsel cited: Trutt v. Spotts, 87 Pa. 339 ; Schenley v. Commonwealth, 36 Pa. 62 ; Robinson v. Myers, 67 Pa. 9 ; Transue v. Sell, 105 Pa. 604 ; Pearl Street, 111 Pa. 565.

*Mr. W. D. Patton* and *Mr. J. P. Coulter* (with them *Mr. J. W. King*), for the appellees.

OPINION, MR. JUSTICE WILLIAMS :

The plaintiff complains of the removal of a gate and part of a fence which enclosed his fields, by means of which his crops were damaged. The defendant admits the acts charged, and seeks to justify them by alleging that they were done in the removal of unlawful obstructions in the alleys adjoining his lots in the village of Green Oak, which deprived him of the use of them in getting upon the rear of his lots. The plaintiff denies the existence of the alleys, and shows a deed from the former owner of the farm which covers the ground where they are alleged to be. Two questions are thus raised : First, were the alleys surveyed by the former owner as part of the plat of the village of Green Oak ? Second, if so, did the plaintiff have actual notice of that fact when he purchased the farm ? These are questions of fact, and if there was evidence bearing upon them sufficient to submit to the jury, their finding is a final disposition of them.

The evidence shows that in 1856 the entire farm was owned by Crissman, who laid out the village of Green Oak on a part of it, and proceeded to sell lots. Ballentine bought lots Nos. 13 and 14. Crissman afterwards sold the farm to Heastand, reserving the lots sold in the village of Green Oak. Heastand sold, with a like reservation, to Sloan, who took possession of the farm. There was no recorded plat of the village of Green

Oak, and the questions encountered on the trial in the court below were: What is the village of Green Oak? ` How many lots, streets, and alleys does it contain, and where are they situated? What actual knowledge had Sloan upon this subject when he purchased the farm. Upon these questions there was considerable evidence, some of which was contradictory, but it was ample in amount to require its submission. We see no reason to complain of the manner in which the learned judge left the questions to the jury. The jury have found that the alleys contended for by the defendant were part of the village plat as laid out, and that their existence and location were known to Sloan when he purchased the farm. The plaintiff had, therefore, no right to recover in the action on the facts so found.

The judgment is therefore affirmed.