## Wolff et ux. v. Moore.

*Adverse possession—Intention—Reference to use of alley in deed to owner of servient tenement.*

1. Where the question involved is the right to the use of an alley, the fact that for more than twenty-one years the ancestor in title of the owner of the alleged servient tenement blocked off the alley in question by iron gates or doors, which remained barred during that entire period, is sufficient to establish adverse possession of the alley in such owner, in the absence of something to indicate that it was not the ancestor's intention to hold adversely.

2. Adverse possession depends upon the intention with which it is taken and held, and, no matter how exclusive the possession may be in fact or in appearance, it does not amount to an adverse possession unless it is taken and held with the intention on the part of the holder to make it such.

3. A conveyance by the ancestor in title of the owner of the alleged servient tenement "under and subject to the use of a certain alley" as mentioned in a deed recited in the conveyance and designated as recorded at a specified page in a particular deed book in the office of the recorder of deeds, an inspection of which deed shows that it conveyed in fee certain property to the said owner of the alleged servient tenement, including the fee to the bed of the alley, "together with the free use, right, liberty and privilege" of the alley in question, does not rebut the presumption that the possession of the ancestor in title of the owner was adverse.

4. Such recital in the aforesaid deed to the owner of the alleged servient tenement does not recreate or regrant the easement to the alleged dominant tenement after it has been lost through adverse possession by the owner of the alleged servient tenement.

Bill for injunction. C. P. No. 2, Phila. Co., March T., 1924, No. 1269, in Equity.

*David Friedman*, for plaintiffs; *Francis G. Gallager*, for defendant.

STERN, J., July 3, 1924.—This is a bill in equity to compel the defendant to remove doors erected at both ends of an alley over which a right of way is claimed by the plaintiffs. On bill, answer, replication and proofs, the court adopts as its findings of fact and conclusions of law the plaintiffs' and defendant's requests for such findings, so far as they have been affirmed or modified by the chancellor. They are sufficiently complete to obviate the necessity of additional independent findings being made.

There is no question in the case but that for a period of more than twenty-one years the defendant's ancestor in title had entirely blocked off the alley in question by iron gates or doors which remained bolted during that entire period. The adverse possession thus created was, during said period, actual, continued, hostile, visible, notorious and exclusive, and thereby those through whom the plaintiffs claim lost their right to the easement which had been originally granted to them in their deeds of title.

It is true that adverse possession depends upon the intention with which it is taken and held, and that, no matter how exclusive the possession may be in fact or in appearance, it does not amount to an adverse possession under the statute of limitations unless it is taken and held with the intent on the part of the holder to make it such. In the present case the plaintiffs point out that in the deed from the Dobson Estate to the defendant of Nov. 13, 1920 (long after the twenty-one years of exclusive possession of the alley had passed), the grant is made under and subject to the use of the alley, and they contend that this shows that it had never been the intention of Dobson to claim adversely to the plaintiffs' easement, and that, therefore, the statute of limitations had never run. That this clause in the deed is to be considered as evidence on that question is undoubted, because acknowledgment of title, even if made after possession has been had for the statutory period, is evidence

Wolff et ux. *v.* Moore.

tending to show that the possession had not been adverse, because not so intended: 2 Corpus Juris, 137; Whitaker *v.* Thayer, 38 Texas Civil Appeals, 537; Shirey *v.* Whitlow, 80 Ark. 444; Cuellar *v.* Dewitt, 5 Texas Civil Appeals, 568. But the authorities are unanimous in holding that the weight and effect to be given to any such acknowledgment, the condition of the parties, the circumstances surrounding the acknowledgment, and the motive back of or responsible for it, must all be passed upon and viewed in the light of the facts of each case, and that they constitute a question purely of fact, as indicating what was the real intention underlying the alleged adverse possession.

The chancellor has viewed the case from these angles, and, without failing to take into consideration the recitals of the deed from the Dobson Estate to the defendant, he has, nevertheless, come unhesitatingly to the opinion that it was at all times the intention of Dobson to bar the plaintiffs' predecessors in title from the easement in the alley; in other words, that the intention was to hold adversely and to gain the legal rights resulting therefrom. For this reason, notwithstanding the deed, the chancellor has found as a fact that all the elements necessary to constitute adverse possession existed, and that the plaintiffs and their predecessors in title lost their rights in and over the alley in question.

The conclusion being, therefore, that at the expiration of twenty-one years of adverse user the defendant's ancestor in title had an absolute and unqualified title to the alley, free and clear of easements, the only serious question in the case is whether the deed from the Dobson Estate to the defendant of Nov. 13, 1920, considered not as evidence of intention, but as a conveyance, revived or recreated the easement so as to restore it to the plaintiffs. While it is true that where title by limitation has become vested in an adverse claimant, a subsequent mere acknowledgment or recognition of some other title does not revest or revive the latter, nor affect the title gained by adverse possession (2 Corpus Juris, 137; Hudson *v.* Stillwell, 80 Ark. 575; Whitaker *v.* Thayer, 38 Texas Civil Appeals, 537; Sailor *v.* Hertzogg, 2 Pa. 182; Bradford *v.* Guthrie, 4 Brewster's Reps. 351), it is, of course, also true that a legal or equitable conveyance may be made of a title gained by adverse possession, the same as of any other title. Dobson, having acquired title freed from the easement of the alley, could, if he so desired, again create such an easement for the benefit of the plaintiffs, if done by proper legal instrument. What the plaintiffs here claim is that the deed from the Dobson Estate to the defendant did in fact recreate or regrant the easement over the alley to the plaintiffs, and that the provision in that deed that the grant was "under and subject" to the use of the alley inured to their benefit. It remains to examine into the merits of this contention.

In the first place, we are met with the fact that the deed in question is not one to the plaintiffs, but is a deed in the defendant's own chain of title. So far from purporting to vest any new or revive any old rights directly in the plaintiffs, it is not even an acknowledgment or declaration made directly to them. Even for the purpose of stopping the running of the statute of limitations, there is some authority to the effect that it is necessary that the declaration or acknowledgment relied upon must be made, not to third persons, but to the owner or his agent: Bradford *v.* Guthrie, 4 Brewster's Reps. 351; Clay *v.* McCreanor, 9 Pa. Superior Ct. 433; De Haven's Estate, 25 Pa. Superior Ct. 507 (affirmed in 215 Pa. 549).

In the second place, an examination of the deed in question shows that it does not at all refer to the rights over the alley which the plaintiffs here claim. It is, as above pointed out, a conveyance of the alleged servient tenement only,

Wolff et ux. *v.* Moore.

and it is made "under and subject to the use of a certain alley, as mentioned in the aforesaid deed recorded in Deed Book T. G., No. 50, page 35." The meaning of this phrase can, of course, be ascertained only by referring to the "aforesaid deed recorded in Deed Book T. G., No. 50, page 35." When we examine the deed thus referred to, we find it to be one from David Scull et al. to John Dobson, dated April 18, 1891, conveying title to the premises Nos. 108 and 110 Church Street, including the fee simple title to the bed of the alley in question, and it adds to the description of the premises the words "Together with the free use, right, liberty and privilege of an alley three feet wide as and for a passageway and watercourse into and from said Jones' Alley (now called Church Street) aforesaid along the middle of Monmouth Court (which runs southwardly from said Jones' Alley and is a part of said lot), and also the right and privilege of building over and under said three feet alley, leaving at least nine feet headway in the clear." It is not clear why it was necessary in this, as in all of the prior deeds of Nos. 108 and 110 Church Street, to grant, in addition to the fee simple title of the alley itself, the appurtenance of the use, right, liberty and privilege of the alley; but, be that as it may, it is clear that the use of the alley referred to in the deed from Scull to Dobson is not a reservation, limitation or restriction upon the use of the alley for the benefit of other persons, but is an additional grant, whether superfluous or otherwise, for the benefit of the grantee therein named. In other words, if the deed from Scull to Dobson had contained a reservation of the rights of the alley for the benefit of the plaintiffs' predecessors in title, and if the deed from Dobson to the defendant, by referring to such rights, had embodied or incorporated them by reference, it might well be held to have thereby established or recreated such easement rights in favor of the plaintiffs. But when it appears, as it thus does, that the reference to the former deed involves a reference merely to the use of the alley by the grantee of the alleged servient tenement itself, it is impossible to see how such rights thus given can be held to refer to or create in the plaintiffs' property similar rights which are not in any way referred to in such deed. In short, the rights over the alley are given, not to the property belonging to the plaintiffs, but to that belonging to the defendant. It is true that the use of the words "under and subject" in the deed from Dobson to the defendant is somewhat confusing, but they cannot be considered as having any significance when we find that they in fact apply, not to a limitation of the use of the property by the grantee in the deed, but to an additional grant made in a former deed of a right appurtenant to the estate granted. Had the words "together with" been used in the deed from Dobson to the defendant, instead of the words "under and subject," there would have been no confusion in the case at all; but, as a matter of fact, the deed to which they refer does contain the words "together with," and shows clearly, as above pointed out, that the reference is to rights over the alley granted to owners of the so-called servient tenement and not to rights reserved to the plaintiffs' predecessors in title.

We conclude, therefore, that Dobson, by adverse possession, freed his title to the alley from the easement theretofore enjoyed by the owners of the plaintiffs' property, and that the deed from his estate to the defendant contains nothing which revives or recreates the easement or grants any rights whatever, directly or indirectly, expressly or by innuendo, to the plaintiffs.

The plaintiffs rely largely upon the cases of McKee *v.* Perchment, 69 Pa. 342, and Nickels *v.* Cornet Band, 52 Pa. Superior Ct. 145. These cases are clearly distinguishable, in that, assuming that the title by adverse possession had, in each of them, been acquired by the owner of the servient tenement, he

did not transmit that title to his grantee, who was the defendant in the case. In each of those cases all that was granted to the defendant was the use of the alley, not the fee simple title to the soil thereof; that is to say, whatever title had been acquired by adverse possession was retained by the person acquiring it, and did not pass to his grantee; therefore, the defendants were held to have no right to claim title in themselves, inasmuch as they had not obtained it by deed or otherwise. In the present case the full fee simple title to the land constituting the bed of the alley was granted straight through the defendant's chain of title to the defendant himself; he obtained by deed the complete title of his grantor, and is, therefore, in the same position to claim the ownership of the title by adverse possession as his grantor who acquired that title would have been—which was not the fact in the two cases cited by the plaintiffs.

For the reasons thus indicated, the court enters the following

### Decree.

And now, to wit, July 3, 1924, this cause having come on to be heard upon bill, answer, replication and proofs, it is ordered, adjudged and decreed as follows: That the bill be dismissed, at the cost of the plaintiffs.

The prothonotary will enter this decree *nisi*, and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.