## Balog v. Marlow and Sheets

*John J. Dirienzo,* for plaintiff.
*William E. Moot,* for defendant Marlow.
*Alexander Ogle,* for defendant Sheets.

COFFROTH, *P.J.,* October 15, 1980 — The above captioned related actions to quiet title are before the court en banc on plaintiffs' exceptions to the order dismissing the complaints following a consolidated nonjury trial before Shaulis, J.

The actions seek to establish right-of-way easements (appurtenant to plaintiffs' land) across certain alleys laid out on a plan of lots (Punter Plan) which includes the land of plaintiffs Balog and of defendants Sheets, and across a strip of land located adjacent to the Punter Plan which connects with the plotted alleys in the plan. Understanding of the parties' respective claims and the issues now before

172

us will be aided by the following draft of the proper-
ties and areas involved:

FIGURE   A

From a brief examination of the above draft (Fig-
ure A) we can identify the areas which are in issue
as follows:

Parcel I, includes: Defendants Marlowe's land,
strip D adjoining Marlowe on the west, and strip E
along the western line of the residue of Parcel I
leading northward from Marlow to Starvish Lane.

Parcel II, includes: The six (originally 5) lots which comprise the Punter Plan, alley A (running east-west), alley B (running north-south and adjoining plaintiffs Balog), and alley C (running north-south and adjoining defendants Sheets).

Plaintiffs Balog presently use alleys A and B for access to the public road (Soap Hollow Road), and their right thereto is not in issue. In issue in the Sheets case (No. 328) is plaintiffs' claim to a right-of-way easement over alley C in Parcel II; in issue in the Marlow case (No. 219) is plaintiffs' claim to a right-of-way easement over strip D in Parcel I.

The remote common owner of all of the land here involved was Josiah J. Kauffman. The nearest common grantor of all parties is Jacob Punter who once owned both Parcel I and Parcel II, but he did not acquire them both at the same time nor own them both at the same time. Punter first acquired Parcel I from Kauffman in 1910, and 10 years later acquired Parcel II from one Krasowec (Kauffman's grantee) in 1920. During that ten year interval, in 1912 Punter conveyed away to one Junc the Marlowe portion of Parcel I which defendants Marlowe now own. In 1921, Punter laid out Parcel II as his plan of lots (Punter Plan) and thereafter conveyed the lots in the plan to various parties. All of the lots in the plan except one are now owned by plaintiffs Balog and defendants Sheets as shown on Figure A above.

Balog v. Marlowe — Plaintiffs' Claim To Strip D On Parcel I:

Plaintiffs' complaint is extremely vague in stating how they obtained an easement over strip D on Parcel I, saying merely in paragraph 12 that they have never disposed of "the right abiding in and with the title holder to the premises presently owned by plaintiffs, to use or make use of . . . . . ." strip D, and in paragraph 13 that such right exists in

plaintffs: "By virtue of plaintiffs' present ownership of plaintiffs' said premises and by virtue of the various conveyances leading to plaintiffs' present ownership. . . "; and stating in paragraph 14: "By virtue of defendants' present ownership of defendants' said premises and by virtue of the various conveyances in the chain of title to defendants' present ownership. . . " There is no specification of how any of those conveyances creates the easement in strip D in Parcel I which plaintiffs claim is appurtenant to their land in Parcel II. There is no mention whatever of such an easement or of strip D in plaintffs' chain of title, and the only reference or possible reference thereto in Marlowe's chain is the easement clause granting to them a right-of-way (hereinafter quoted and more fully discussed). The only other averments in plaintiffs' complaint in the Marlowe case which are apparently given substantial significance are those set forth in paragraphs 8, 9 and 10 to the effect that Kauffman "constructed and maintained a certain road or alley. . . along the western side of defendants' [Marlowe's] premises. . . . " which ". . . abutts, meets directly and is contiguous and continuous with. . . " alley C on the Punter Plan, thus implying physical connection of strip D and alley C at the boundary line between Parcels I and II as a thruway across both parcels, manifesting an itention on the part of Kauffman to create a single access system for the reciprocal benefit of both Parcels I and II. The trial judge found from abundant evidence that there was little or no evidence of any physical use on the ground of either strip D or alley C, but ample evidence of use of strip E northward from the Marlowe property to Starvish Lane. That evidence tends to negate any intention to connect the two ways or proposed ways at the boundary of Parcels I and II and any intention

to create reciprocal benefits and servitudes for the landowners in both Parcels I and II; that evidence also tends to show that the easement granted in the Marlowe chain was intended to run northward (to Starvish Lane) and not southward to the alleys in Parcel II. The trial judge so concluded and dismissed plaintiffs' complaint in the Marlowe case for any right-of-way easement over strip D.

There are other factors which support that conclusion which are worth mentioning:

First, plaintiffs' theory that the easement granted in the Marlowe chain establishes an easement over strip D adjoining the Marlowe property on the west is wholly untenable as examination of that grant and the deeds of record incontestably discloses. That grant (herein called the easement clause) first appears in the deed from Punter to Junc in 1912 (deed book volume 177 page 58) for the Marlowe property and provides as follows (bracketed material added):

"The parties of the first part [Punters] further agree that the party of the second part [Junc, Marlowe's predecessor in title] shall have the right of ingress, egress and regress to and from said piece or parcel of land herein described [Junc, now Marlowe], along the western line of the property of which this is a part of a width not to exceed ten feet and connecting with an alley heretofore laid out by Josiah J. Kauffman, former owner of the ground of which the piece herein described [Junc, now Marlowe] is a part."

In order for that easement clause to make any sense as granting to Junc (and Marlowe) a ten foot easement over strip D, it must appear that said strip was not included in the land conveyed by that deed to Junc, otherwise the parties are in the anomolous position of conveying to Junc an easement over his

own land, a patent impossibility. See: Obringer v. Minotte, 352 Pa. 188 (1945); Witman v. Slichter, 299 Pa. 484, 489 (1930); Gogel v. Blazofsky, 187 Pa. Superior 32 (1958); CJS, Easements §57. Comparison of the courses and distances in the deed from Kauffman to Punter for the Marlowe property (deed book volume 168 page 135) and the courses and distances in the deed from Punter to Junc for that property (deed book volume 177 page 58) clearly shows that Punter conveyed to Junc the whole of the east-west width of Parcel 1 (200.7 feet) without any exception or reservation of strip D.

It follows that, in the language of the easement clause supra granting to Junc a right-of-way ". . . . along the western line of the property of which this is a part [Parcel I] . . .", the reference is not to a right-of-way over and along the western line of the Junc-Marlowe property but over and along the western line of the residue of Parcel I lying north of Marlowe — otherwise the Punter-Junc deed would have to be construed as granting to Junc a right-of-way over his own land. The correctness of that conclusion is confirmed and fully consistent with the remaining language of the easement clause describing the easement area as running along the western line of the residue of Parcel I and as ". . . connecting with an alley heretofore laid out by Josiah J. Kauffman, former owner of the ground of which the piece herein described is a part" (Parcel I); that "alley" referred to which the right-of-way to the north of Junc-Marlowe is "connecting with", obviously is and must be Starvish Lane. Kauffman was the former owner of Parcel I, "the ground of which the piece herein described is a part", and also had been the owner of the area between Parcel I and Soap Hollow Road which Starvish Lane traverses.

It is therefore evident that plaintiffs' argument that the connecting alley mentioned in the easement clause is alley C on Parcel II (which Kauffman also owned before conveying it to Krasowec in 1913), cannot stand. Additional factors support this view:

(1) At the time of the Punter-Junc deed for the Marlowe property, the alleys on Parcel II had not yet been laid out; and Parcel II was then (1912) still owned by Kauffman. The Punter Plan of lots was not made until 1921. Consequently, the connecting alley mentioned in the easement clause as "heretofore laid out" could not be the then non-existent alley C on the Punter Plan as plaintiffs contend.

(2) The language of the easement clause in the Marlowe chain granting a right-of-way running along the western line of Parcel I "and connecting with an alley heretofore laid out by Josiah J. Kauffman, former owner. . . ", most logically suggests that the connecting alley referred to was laid out upon land which Kauffman, at the time the easement clause was written in 1912 formerly owned (as is the case with the land on which Starvish Lane was laid out), not upon land which Kauffman then presently owned (Parcel II).

Second, the right-of-way grant in the easement clause can operate only in favor of one who is named or described therein as a party or, if the language of the instrument is sufficiently ambiguous respecting identity of the parties, one whom the evidence shows was intended thereby to be a beneficiary of the grant. Compare: Santangelo v. Osselburn 40 Somerset L. J. 49, (1980); CJS, Deeds §99. Plaintiffs are complete strangers to all deeds which contain the easement clause, and none of them contains language even slightly suggesting that plaintiffs or their predecessors in title were intended as

beneficiary of the easement clause. Compare Shaffer v. Shaffer, 30 Somerset L. J. 166 (1975). Unless, therefore, the circumstances of this case fall within some recognized principle of implied easement, plaintiffs derive no benefit from the easement clause in the Marlowe chain of title.

We have found no authority and none is cited to us which recognizes even the possibility of an implied easement in this situation. Established principles of law require that a granted easement, express or implied, can come into being only in favor of a party to a conveyance. As stated in PLE, Easement §8:

"Easement may be created by implication in favor of a grantor or grantee." Emphasis added.

In CJS, Easements §30, the black letter text states: "Easements may be implied in favor of a *grantor or grantee.*" (Emphasis added.)

Implied easements are recognized as existing in four situations: (1) severance or partition of land among multiple owners whose portions are traversed by a road or way, whose continued existence is manifested bv surrounding circumstances to have been intended (Heffley v. Lohr, 149 Pa. Super. 586 (1942), appeal from this court), (2) necessity of access, (3) sale of lot with reference to map or plan of streets and alleys, and (4) description of land as bounded by a street or way. See PLE, Easements §§8 through 12. The present Marlowe case does not fall within any of those categories.

Indeed, although the case was apparently tried on the theory that the easement clause was ambiguous, opening the door to extrinsic evidence of the manifested intention of the parties under the parol evidence rule, it is at least doubtful that such ambiguity exists here. See Santangelo v. Osselburn (No. 2), supra. Assuming, however, the admissibility of

extrinsic evidence, then even if plaintiffs had been able to show that strip D on Parcel I and the alleys on Parcel II were physically connected and open on the ground, and so used for access between the two parcels, no easement would arise by implication in favor of a landowner in one parcel across the alleys or strips in the other parcel. Compare Titusville v. Titusville, 286 Pa. 561 (1926) headnote 6. Nor would added extrinsic parol evidence of plain intent to make the route over such parcel available to landowners in both parcels be sufficient to grant an easement in the route over one parcel to landowners in the other, absent proper conveyancing or reformation or adverse user.

The exceptions to the decree dismissing plaintiffs' complaint in the Marlowe case must be overruled.

Balog v. Sheets — Plaintiffs' Claim In Alley C in Parcel II:

The trial judge found that plaintiffs acquired with their deed for their lots in the Punter Plan of lots (Figure A supra) a private right-of-way easement over all of the alleys laid out and shown on the Punter Plan over Punter's land, including alley C, because plaintiffs' lots were conveyed to them and to their predecessors in title according to and with reference to the Punter Plan. It is a well established rule of law that whenever a lot of land is sold with reference or according to a map or plan of lots upon which streets or alleys are laid out by the grantor over his property, the grantee of the lot automatically acquires a private right-of-way easement over all such streets and alleys in the plan, appurtenant to the lot, unless a contrary intention is clearly manifested. See: O'Donnell v. Pittsburgh, 234 Pa. 401 (1912) quoted and followed in Reed v. Reese, 473 Pa. 321, 330 (1977); PLE, Easements §11; CJS,

Easements §39; compare Stover v. Gowen, 280 Pa. 424,124 A.2d 684, (1946) public street, and Snyder v. Commonwealth, 353 Pa. 504,46 A.2d 247, (1946) unmanifested contrary intention. That rule of law applies to all such non-public streets and alleys in the plan whether or not the lot abuts thereon and whether or not the street or alley is used, or is useful for access to the lot. Oxford v Evans, 59 D.&C.2d 783 (1970). An examination of the deeds in plaintiffs' chain of title shows that plaintiffs' lots fall within that rule of law.

The Punter Plan of lots is dated September 17, 1921, and was prepared by S. E. Dickey & Company, engineers. It was laid out on Jacob Punter's tract of land shown as Parcel II in Figure A supra which he acquired in deed of Martin Krasowec and wife dated October 2, 1920 recorded October 4, 1920 (deed book volume 222 page 245), embracing the five lots shown on Figure A (the large lot in the southwest part of Figure A divided by broken line was a single lot on the original plan, Exhibit D). Punter and wife conveyed the above mentioned large lot to Chonoki, one of plaintiffs' predecessors in title by deed May 18, 1922, recorded June 9, 1922 (deed book volume 246 page 554); although the description of the lot in that deed mentions no street or alley except Soap Hollow Road, there appears immediately after the description of the lot conveyed this reference to the Punter Plan:

". . . as shown on print of Jacob Punter, showing plan of lots in Conemaugh Township, Somerset County, Pa. and made by S. E. Dickey & Company, civil and mining engineers, September 17, 1921", and recites

"Being part of a parger tract of land which Martin Krasowec and Martha Krasowec his wife, by their deed dated the 2d day of October, 1921 and record-

ed in the Recorder's Office of said Somerset County in deed book volume 222 of page 245 conveyed to Jacob Punter one of the grantors herein."

Then Punter and wife conveyed plaintiffs' other two lots shown on Figure A on the east side of alley B to Remus Balog and wife (plaintiffs' predecessor in title) by deed dated July 14, 1922, recorded July 20, 1922 (deed book volume 251 page 248); in that deed the lots are described as a single combined parcel naming the alley (alley B) as adjoiner, and making the following reference to the Punter Plan:

". . . on plan of Jacob Punter showing plan of lots located in Conemaugh Township, Somerset County, Pa. and made by S. E. Dickey & Company civil and mining engineers September 17, 1921. . . "
and reciting

"Being part of a larger tract of land which Martin Krasowec and Martha Krasowec his wife by their deed dated the 2d of October, 1921 and recorded in the Recorder's Office of said Somerset County in deed book volume 222 as page 245 conveyed to Jacob Punter one of the grantors therein."

Thus, it is clear the plaintiffs' lots were conveyed with reference to the Punter Plan of lots, and that plaintiffs thus acquired an appurtenant right-of-way easement over all of the alleys in the plan including alley C. Of course, those deeds gave plaintiffs no right in Parcel I (Figure A) nor in any other land beyond Parcel II (Figure A), as pointed out in Balog v Marlowe supra. See Titusville v Titusville, supra.

The question then arises whether defendants Sheets are bound by plaintiffs' easements rights thus acquired, particularly in alley C which runs through the Sheets lots. Plaintiffs' easement rights are binding only upon such other lot owners in the Punter Plan who, when they acquired their lots, had legal notice of the existence of the plan or of the

alleys. See: Reed v. Reese, supra; Jones v. Sedwick, 383 Pa. 120,117 A.2d 709, (1955); B&O v. Wilson, 279 Pa. 219 (1924); Anania v. Serenta, 275 Pa. 474 (1923); O'Donnell v. Pittsburgh, supra; Sloan v. Ballentine, 138 Pa. 99,20 Atl. 839, (1980); Paci v. Shipley, 166 Pa. Super. 374,71 A.2d 844, (1950); Vinso v. Mingo, 162 Pa. Super. 285, 288, 57 A.2d 583, (1948); Berzonski v. Holsopple, 28 Somerset L. J. 342, 353, (1973); Spring City v. Carey, 16 Chester 124 , (1968) affirmed 434 Pa. 193,252 A.2d 666, (1969); Pierce v. Gay, 107 PLJ 346 (1957); Philadelphia v. Raum, 28 (45) PLJ 440 (1898).

The law recognizes both actual notice or knowledge of such easement rights, and constructive notice thereof. Constructive notice exists when there are facts available which a reasonably prudent buyer of land should learn of or discover whether he actually does so or not. "A duty to inquire gives constructive notice to what would have been ascertained by inquiry. . . . [C]onstructive notice is merely a conclusive presumption that the party in question had actual notice, regardless of whether in fact he had any knowledge." PLE, Notice §3. A purchaser of property may not close his eyes to facts which reasonable prudence and diligence would discover. "The law imputes to a purchaser knowledge of such facts which he would have acquired by the exercise of ordinary diligence." Anania v. Serenta, supra, 478. Thus, a purchaser is bound by what is visible on the ground and by what his conveyance and the public records in and affecting his chain of title show, whether or not he in fact examines them, and is bound by what he is otherwise in fact informed of. See cases cited supra (page 109). In the present case, the trial judge found insufficient evidence of alley C's existence on the ground to furnish notice thereof to defendants Sheets; also,

the plan of lots was not recorded, there is no specific reference to it in Sheets' chain of title, and there is no evidence that they were told of it or had any knowledge of it. Nevertheless it is clear that defendants Sheets had constructive notice of alley C and of the Punter Plan, which makes their property legally subject to the easement rights of other lot owners in the plan, including plaintiffs, over alley C which runs through the Sheets lots.

The Sheets chain of title embraces only two relevant deeds: (1) deed from Jacob Punter and wife to Hainc dated April 16, 1925, recorded April 24, 1925 (deed book volume 265 page 75), and (2) Hainc to Sheets, dated January 31, 1956, recorded February 24, 1956 (deed book volume 490 page 605). The description of the land conveyed is the same in both deeds, conveying the two Sheets lots shown on Figure A above as a single parcel fronting on Soap Hollow Road; the description is as follows:

"BEGINNING at a post on the Eastwardly side of the Soap Hollow Road at the corner of a *10 foot alley*; thence by said Road North 3° 24′ West 46.86 feet to a post at corner of land formerly of J.J. Kaufman; thence by said land formerly of J.J. Kaufman South 67° 27′ East 309.56 feet to a post at land now or formerly of David Ott; thence by said land now or formerly of David Ott, South 43° 40′ West 44.4 feet to a post at land now or formerly of Remus Balog; thence by said land now or formerly of Remus Balog and *across a ten foot alley* and along *the northerly side of an alley* North 67° 27′ West 273.34 feet to Soap Hollow Road, the place of beginning." (Emphasis added.)

The recital of title in the Punter-Hainc deed shows that the Sheets property is part of the larger parcel of land acquired by Punter from Krasowec (deed book volume 222 page 245), the same larger

parcel of which plaintiffs' property is a part, that is, Parcel II on Figure A comprising the Punter Plan. Comparison of the above quoted deed description with Figure A above (and with the Punter Plan), shows that the first emphasized reference in the description to "a 10 foot alley" is alley A, that the second emphasized reference "across a ten foot alley" is alley C, and that the third emphasized reference to "the northerly side of an alley" is again alley A. Although there is no reference to any map or plan, it is obvious that anyone who reads the deed carefully must conclude that, in order for Sheets' southerly boundary to cross (not merely run along) a 10 foot alley, there is and must be a north-south alley running northward from that boundary through the Sheets property; and since there is clear evidence of the visible existence of alleys A and B on the ground, the strong likelihood is that the second alley reference in the Sheets deeds is alley C, an extension northward of alley B which also connects with alley A. Those alley references in the Sheets chain of title, together with the existence of alleys A and B on the ground, reasonably put the owners of the Sheets property on notice of the likely existence of a system of alleys, and therefore of a plan of lots, affecting Parcel II (Figure A), sufficient to bind anyone who acquires that property. See Louden v. Apollo, 273 Pa. Super. 549, 417 A.2d 1185 (1980).

Had Hainc or Sheets made inquiry of other owners in Parcel II namely plaintiffs Balog, as reasonable diligence under the circumstances would dictate, they would likely have discovered the Punter Plan which plaintiffs possessed. At least they would have learned whether plaintiffs had any claim across the Sheets property and whether plaintiffs would have executed a proper release or quitclaim; and if not, proceedings to quiet title would than

have been available to dispel the cloud which the alley references in the Sheets deed created. Complete extinguishment of the private easements in streets and alleys on a plan of lots can be accomplished only with the consent of all owners in the plan. McKee v. Perchment, 69 Pa. 342, (1871). Defendants Sheets would have been prudent by engaging in litigation then if necessary, before they purchased the property, rather than now.[1]

In addition, defendants Sheets must be charged with notice of the recitals in Punter's deeds to Chonoki and Remus Balog in plaintiffs' chain of title previously referred to, which establish the existence of the Punter Plan as affecting the Krasowec-Punter parcel (Parcel II on Figure A) of which the Sheets lots are also a part. Reference to an unrecorded plan in recorded deeds in or affecting the chain of title is notice of the plan and of the streets and alleys shown thereon. McKee v. Perchment, supra, cited with approval in Reed v Reese, supra, 333. While the Punter-Chonoki and Punter-Balog deeds and their references to the Punter Plan are not directly in the Sheets chain of title, they are recorded adverse conveyances affecting that chain which anyone purchasing the Sheets property was bound to look for and to find in a search of the Sheets title. That is so because Punter is a common grantor in both the Sheets and Balog chains; and the Punter

---

1. Mere nonuser of the easement no matter now long continued will not extinquish an easement, absent estoppel or adverse possession. Sabados v. Kiraly, 36 Somerset L. J. 1 (1976) affirmed 258 Pa. Super. 532,393 A.2d 486 (1978); McKee v. Perchment, supra; Gailey v. Wilkinsburg, 283 Pa. 381(1925). Although defendants pleaded estoppel and adverse possession in the instant cases, there was insufficient evidence thereof, at least in the Sheets case, and the trial judge made no findings sustaining either of those defenses.

deeds for the Balog lots (and their references to the Punter Plan) were recorded in 1922 prior to the recording of Punter's deed for the Sheets lots in 1925, so that anyone acquiring the Sheets lots was obligated to search and examine all of Punter's deeds from the Krasowec property from the time Punter acquired it in 1920, at least through 1925 when he conveyed the Sheets portion to Hainc. A purchaser of land is legally charged with notice of, and therefore bound to search for, all adverse conveyances not only of the common grantor but of all persons who have held title (at least during their periods of ownership of the property being examined and for six months thereafter). See: Reed v. Reese, supra, 323-333; Finley v. Glenn, 303 Pa. 131,154 Atl. 299 (1931); Camp Chicopee v. Eden, 303 Pa. 150,150 Atl. 305 (1931); Ladner, Conveyancing in Pennsylvania (3d Edition Bisel 1961) §16.04. Therefore, it is not decisive that the deeds in the Sheets chain of title did not refer to the Punter Plan. Ozehoski v. Scranton, 157 Pa. Super. 437, 440 (1945).[2]

Under these circumstances, the trial judge was correct in concluding that plaintiffs have an easement over alley C.

The trial judge then held that in view of the decision in the Marlowe case denying plaintiffs any easement over strip D, plaintiffs' claimed easement over alley C is no longer continuous, and goes no-

---

2. It is worth noting that the Hainc (Haines) deed to defendants Sheets contains the following clause:

"Under and subject to the reservations, restrictions, conditions and exceptions contained in prior deeds and conveyances."

Without attempting here to determine the full meaning and effect of this clause, it at least serves as a cautionary warning to the grantee (Sheets) that there may be such encumbrances in prior deeds and conveyances, that the grantee will be bound by them and should have the title examined.

where, with the result that plaintiffs lose their easement over alley C, citing Trexler v. Lutz, 180 Pa. Super. 24,118 A.2d 210, (1955).

Plaintiffs should not lose their easement over alley C merely because it is presently useless to plaintiffs. In Baptist Church v. Urquhart, 406 Pa. 620,178 A.2d 583, (1962), the Supreme Court declined to follow Trexler supra and distinguished it on the ground that in Urquhart there was some indication or evidence in the record that the easement claimant could obtain a license from an intervening landowner which would then make the easement continuous and useable, and its purpose attainable, and that: "Equitable principles would indicate that the opportunity to do this should be afforded." (626) Compare Manion v. Berkey, 26 Somerset L. J. 174, 181 (1970).

In the instant case, there is no indication or evidence that plaintiffs can acquire any easement over Marlowe; probably not. But there is nevertheless a significant distinction between the instant case and Trexler-Urquhart. In both of the latter cases the missing portion of the claimed easement was essential to accomplish the original basic purpose of the easement; in Trexler, the claimed easement rested on prescription, and a portion of the route of the easement was invalidated by the statute prohibiting a prescriptive easement through unenclosed woodland. In Urquhart, the purpose of the right-of-way was for access to lands which could not be reached without the missing segment. But in the instant case, the easement over the streets and alleys in the plan arose independently of any need or purpose to use it to go northward over Marlowe, and exists for the benefit of plaintiffs' lots in the Punter Plan independently of plaintiffs' need or desire to go over Marlowe. Consequently, the original object of the

implied right-of-way over the plan's alleys is unaffected by plaintiffs' loss of their claim for the Marlowe right-of-way, and the existence of the implied right-of-way within the Punter Plan should not depend upon acquiring the Marlowe easement.

This distinction has in substance been recognized in Woodlawn Trustees v Michel, 418 Pa. 398,211 A.2d 454 (1965) where the court refused to deprive plaintiff of a granted non-continuous easement, because the granted easement nevertheless served the purpose of the grant. The court said that (402-3):

". . . in order to establish his right to an easement over the servient tenement, plaintiff is not required to prove his legal right to pass over land which separates the dominant and servient tenements. Plaintiff is required to establish only that an easement across defendant's property was granted for the benefit of his property, that the easement exists, and that it continues to provide the benefit to the dominant tenement contemplated by the grantor."

Here that requirement is met: the implied easement exists, and it continues to provide the same benefit to plaintiffs which was contemplated by the grantor in laying out the plan of lots, as fully as though no claim were ever made over Marlowe. We do not construe the court's language in Woodlawn supra as requiring that plaintiffs' easement over alley C be in actual use, merely that the easement exists in law and its area exists in fact on the ground for potential use or value to plaintiffs' land; the implied easement arises and continues to exist whether or not the plotted way is actually open or used. Grimes v. Schmidt, 184 Pa. Super. 159,132 A.2d 406 (1957). To hold otherwise would deprive plaintiffs of their easement over the alleys of the plan of lots in which their land is located which they would have

irrespective of this litigation, merely because their later claim to a connecting easement over land adjoining the plan of lots, failed. As stated in Manion v. Berkey, supra, 181, the difficulty "may not be insoluble if plaintiff can otherwise acquire means of access."

The exceptions to the dismissal of plaintiff's complaint in the Sheets case should be sustained and a decree made adjudicating plaintiffs' right to the implied easement over the alleys of the plan, specifically alley C.

## FINAL DECREE

Now, October 15, 1980, it is ordered and decreed as follow:

1. In Balog v. Marlowe, no. 219 Civil 1978, the exceptions to the order of November 23, 1979 dismissing plaintiffs' complaint against defendants James R. Marlowe and Jane Marlowe are overruled and said complaint is dismissed.

2. In Balog v. Sheets. no. 328 Civil 1977, the exceptions to the order of November 23, 1979 dismissing plaintiffs' complaint against defendants Harry L. Sheets and Lavona Sheets are sustained and said dismissal order is vacated. Plaintiffs are the owners of a right-of-way easement over and across all of the alleys laid out and shown on the Jacob Punter Plan Of Lots dated September 17, 1921 (the original of which, Exhibit D, is attached to and made part of this Final Decree), as an appurtenance to said plaintiffs' land conveyed to them by deed of Maggie Balog, dated July 16, 1971, recorded in the office for the recording of deeds at Somerset, Pa. on July 30, 1971 in deed book volume 704 page 520, and said defendants are forever barred from asserting any right, title or interest in said land, or in the alleys

upon said Jacob Punter Plan of Lots, inconsistent with said right-of-way easement.

3. The prothonotary shall, unless an appeal from this decree is filed within 30 days, cause this final decree and the plan of lots attached hereto to be recorded in the recorder's office.

4. Costs on plaintiffs.