## Reading Company v. Maguire et ux.

*White, Williams & Scott*, for plaintiff.
*Joseph V. McEnery*, for defendants.

ALESSANDRONI, J., June 10, 1952.—Plàintiff instituted a bill in equity praying for an injunction to restrain defendant Charles B. Maguire from interfering with the private water main plaintiff had installed upon a lot of ground owned by defendant. The cause came on for hearing and the chancellor granted the prayer of the bill. Defendant has filed exceptions.

The facts are stipulated. In 1916 Green Lane was placed by the City of Philadelphia as a public highway on the city plan. The Reading Company, with permission of the city, installed a private water main in what would have been part of the bed of Green Lane. On January 3, 1921, Green Lane was vacated as a

public highway. The only sign of the existence of the water main was a valve box located near the curb of Tenth Street and the intersection of what was formerly Green Lane. When defendant acquired title to the land under which the main ran he shut off the further flow of water by cutting the pipe.

The issue before the court is whether or not plaintiff has an easement for the water main; defendant has denied the existence of such right, he points to the initial permission granted by the City of Philadelphia. The only question of fact concerned the element of notice. Was the existence of the main sufficiently open, visible and notorious as to put the owner of the land on notice. This issue was resolved in favor of plaintiff. The open location of this valve box was sufficient to characterize the existence of the water main as being apparent: 58 A. L. R. 818, cited in Vanderwerff et ux. v. Consumers Gas Company et al., 166 Pa. Superior Ct. 358, 362. A reasonable inspection would have given notice of the main's existence: Kieffer v. Imhoff, 26 Pa. 438.

We turn now to consider the contention of defendant, namely, that the initial entry having been permissive, the subsequent use could not have been adverse. The argument continues that because the use was permissive initially, even though the street was subsequently vacated, as against the restored owners of the bed of the street, it was still permissive. The logical conclusion must perforce be that the city's permission bound all subsequent land owners. The rule of law that defendant seeks to invoke is valid but not here applicable.

It is clear that the contrary is true, namely, that the vacation of the street by the city determined the power of the city to grant any permission. The case of Titusville Amusement Company et al. v. Titusville Iron Works Co. et al., 286 Pa. 561, upon which defend-

ant relies, does not support his position. There a gas company, among others, sought to enjoin defendant from erecting a building on the bed of a vacated street. Such construction would force the company to relocate its mains. The company argued that since it had the permission of the city, it had a right to have the pipes remain there. The court said, at page 574:

"When its pipes were laid, the gas company knew, for it was bound to know, that the city could vacate this part of the street, subject to whatever legal liability, if any, would arise from so doing; and that, in such a contingency, the owner of the soil, theretofore subject to the public easement, could thereafter do with it as he pleased since it was his property."

Clearly the language that defendant has relied on provides little support for his argument that since the use was permissive in origin it continued to be permissive. The court there held that the use ceased to be permissive and the user could be uprooted at the will of the owner. Were it otherwise, the owner might be confronted with an irrevocable license since the company acted at great expense relying on the permission granted. The land in the Titusville case, supra, as in the instant case, reverted to the owner to do with it as he pleased. Hence, if the use was open, visible and notorious, it was adverse because the owner of the land had never given his consent. If the owner had given his consent, clearly, the use, regardless of the number of years that subsequently passed, could never be adverse.

The permission granted expired when the city vacated the street. That permissive right being no longer in existence, the use was adverse. The question of fact as to whether or not it was sufficiently apparent by means of the existence of the valve box was resolved in plaintiff's favor. The photographs indicate that such

box was clearly visible, and would give notice of the existence of a water main. All the elements for the ripening of a prescriptive right are present.

Defendant further argues that even if the requirements of a prescriptive right have been met, still, a public utility having the power of eminent domain cannot acquire rights by prescription. The right of a utility such as a railroad to acquire land for the auxiliary purpose of laying a water main by eminent domain might be open to serious question; however, it need not be considered here. The law applicable to eminent domain is similar to that of prescriptive rights insofar as the presumption of lost grant in the latter is replaced by the presumption that damages for the taking in the former have been paid. Both are operative only if the necessary time has elapsed: Brankin v. Phila., Newtown & New York R. R. Co., 286 Pa. 331, held that one attempting to eject a utility from land supposedly taken by eminent domain has the burden of affirmatively establishing nonpayment, when a period of 20 years has elapsed.

Defendant's exceptions are without merit on both of the grounds advanced.

Therefore, by reason of the foregoing, the court enters the following

### Order

And now, to wit, June 10, 1952, defendant's exceptions to the adjudication are dismissed. The court en banc enters the following

### Final Decree

And now, to wit, June 10, 1952, it is ordered, adjudged and decreed that an injunction issue restraining defendant, Charles B. Maguire, his servants, agents and employes and those claiming under him, from:

1. Preventing or interfering in any way whatsoever with plaintiff in entering on said land in order to restore or repair the private water main or to operate the valve box on the land in order to regulate the flow of water from the Tenth Street water main to the premises of plaintiff.

2. Turning off or in any way from interfering with the supply of water in the private water main leading from Tenth Street to the property of plaintiff.

It is further ordered that plaintiff is authorized at any time to enter upon the land which was formerly the bed of Green Lane to repair and keep in order and use the private water main installed therein.

Defendant is ordered and directed to pay forthwith the sum of $42.61, with interest thereon.

Costs are to be paid by defendant.